# Exhibit C2: Screenshots

# Contents

Exhibit C2: Screenshots . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
1. X (Formerly Twitter) Posts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
   1.a. X Bio Comparison . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1
   1.b. Rapport's Poll . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 2
   1.c. Chapiro's Pitch Deck . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3
2. Signal Screenshots . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 4
3. LinkedIn . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
   3.a. Ryan Dunn Outreach . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 11
   3.b. Ryan Dunn Response . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 12

# 1. X (Formerly Twitter) Posts

## 1.a. X Bio Comparison



Figure 1: Notably, Defendant's "maximalist" phrasing echoes Rapport's own phrase—"reality maximalist"—from his public bio, reflecting a broader pattern in which Chapiro has sought to expropriate not only Rapport's work, but elements of his identity.

## 1.b. Rapport's Poll



Figure 2: This poll demonstrated that most people preferred $50 million. Chapiro, however, viewed his posts as a matter of free speech.

**1.c. Chapiro's Pitch Deck**



Figure 3: Confirmation that Chapiro diverted the April 15, 2025 funding opportunity for Radian Industries to pitch his shell company Black Lattice instead.

## 2. Signal Screenshots



Figure 4: Text exchange dated April 6, 2025 in which Chapiro explicitly concedes he made no inventive contribution to the Artifact patent.



Figure 5: Text exchange dated April 12, 2025 in which Chapiro admits that Rapport has full governorship authority of Radian Industries.



Figure 6: Text exchange in which Chapiro details one of his many schemes for restructuring Radian, which directly conflicts with Rapport's board resolutions.



Figure 7: Text exchange in which Chapiro admits he read the Radian Industries Conflict of Interest Policy ("I did read the Conflicts doc") and nonetheless attempts to reframe the policy by asserting that spinoff entities are merely "divisions of Radian." This statement directly contradicts the language of the policy, which prohibits officers from maintaining roles or material stakes in outside entities that overlap with the company's core technologies.



Figure 8: Signal message exchange in which Chapiro confirms awareness of the corporate minute book and its contents, including the signed Conflict of Interest Policy. This constitutes written admission that he was aware of and had access to all binding governance documents contained therein.



Figure 9: Message exchange in which Chapiro affirms receipt and understanding of a document ("roles.pdf") outlining the delineation of responsibilities between CEO and CTO, and the requirement that major strategic or financial decisions be approved by the board. Chapiro explicitly acknowledges: "At no point did I think I could autonomously enter into partnership agreements," confirming his awareness of board approval requirements and rejecting any claim to unilateral authority.



Figure 10: In this April 7, 2025 exchange, Chapiro flatly rejects Rapport's suggestion to pursue non-dilutive government funding through ARPA-E, dismissing the grant opportunity as a "waste of time" despite its direct relevance to the Vacuustat's commercial viability. Immediately afterward, Defendant also admits that he had not filed the company's taxes—which he never filed—confirming a second, critical dereliction of his responsibilities as CEO.



Figure 11: Chapiro admits that Phoenix Dynamics is a "garage operation" and a "funding tactic"—in other words, a shell company for expropriating Rapport's intellectual property.

## 3. LinkedIn

### 3.a. Ryan Dunn Outreach



### 3.b. Ryan Dunn Response






Figure 13: Dunn's assessment of Chapiro as "a tricky guy" whose "pattern would be to come to the (potentially dubious) conclusion that what he was doing was best for the technology, country, or company, and proceed with minimal respect for the downsides" aligns closely with Chapiro's post-dissolution misconduct. This is probative of Chapiro's modus operandi and relevant to the pattern of intentional misconduct at issue in this case.