# IN THE UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISON

| | | |
|---|---|---|
| NATHAN RAPPORT, et al., | ) | CASE NO. 1:25-cv-02071 |
| | ) | |
| Plaintiffs, | ) | JUDGE CHARLES ESQUE FLEMING |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | REUBEN J. SHEPERD |
| MICHAEL CHAPIRO, | ) | |
| | ) | **REPORT AND RECOMMENDATION ON** |
| | ) | **APPLICATION TO CLERK FOR** |
| Defendant. | ) | **DEFAULT JUDGMENT** |
| | ) | |
| | ) | |
| | ) | |

## I.    Introduction and Procedural History

On September 30, 2025, Plaintiffs Nathan Rapport and Radian Industries, Inc. (collectively, "Plaintiffs") filed a Complaint, with attachments in support, against Defendant Michael Chapiro ("Chapiro") raising 23 civil claims, among them violation of Plaintiffs' trade secrets, Lanham Act claims, RICO claims, contract claims, defamation, tortious interference with business relationships, and Ohio state-law claims, among others. (*See generally* ECF Docs. 1, 2). On October 3, 2025, Plaintiffs filed an *ex parte* motion to seal the exhibits to the complaint, which Judge Fleming granted on October 6, 2025. (ECF Docs. 4, 6; *see also* ECF Docs. 7-9). On October 29, 2025, the matter was referred to me for general pretrial supervision and resolution of non-dispositive motions. (Non-document entry of October 29, 2025).

On October 28, 2025, Plaintiffs filed an *ex parte* Motion to permit alternative service on Defendant (ECF Doc. 10), amended on October 29, 2025 (ECF Doc. 11), alleging that Defendant

has been avoiding service, despite Plaintiffs' attorney's attempts to serve him. (ECF Doc. 11). On October 29, 2025, I denied Plaintiffs' motion for alterative service without prejudice, and instructed Plaintiffs' attorney to effect service according to Local Rule 4.2. (Second non-document entry of Oct. 29, 2025). On November 3, 2025, the Clerk placed the Summons and Complaint in the U.S. mail for service by certified mail. (Non-document entry of Nov. 3, 2025).

On October 31, 2025, Plaintiffs filed an *ex parte* motion for a temporary restraining order ("TRO"), (ECF Doc. 12), which Judge Fleming referred to me for preparation of a report and recommendation, (non-document entry of Nov. 4, 2025), and on November 6, 2025, I recommended that Judge Fleming deny the TRO, at least to the extent it was filed *ex parte* (ECF Doc. 13). On November 21, 2025, I conducted a hearing intended to resolve the TRO, should Chapiro appear. Rapport appeared at the hearing on behalf of Plaintiffs, represented by counsel; Chapiro did not appear.

Plaintiffs have since filed a Return of Service (ECF Doc. 16), a Notice of Perfected Service (ECF Doc. 17), and an Application to Clerk for Entry of Default ("Default Application") against Chapiro (ECF Doc. 18), which I now consider in issuing this report and recommendation.

## II.    Discussion

Plaintiffs have applied to the Clerk for an entry of default, pursuant to Federal Rule of Civil Procedure 55(a) against Chapiro, on the grounds that he has failed to plead or otherwise defend this suit within the time permitted by law. (ECF Doc. 18, p. 1). According to Federal Civil Rule 12(a)(1)(A)(i), a defendant must answer within 21 days of service – which Plaintiffs calculate as December 1, 2025, based on the certified mail receipt date of November 8, 2025. (ECF Doc. 18, pp. 3-4). Plaintiffs filed the present Default Application on December 3, 2025. (*See generally id.*).

Before it may enter default judgment against a defendant who has not appeared, a court must first find it has personal jurisdiction over the defendant to ensure it does not render a void judgment. After inquiry, it does not appear that service has yet been perfected against Chapiro, and this Court lacks personal jurisdiction over him. For the reasons that follow, I recommend the District Court deny Plaintiffs' application for default for want of personal jurisdiction over Defendant Chapiro.

### A. The summons and complaint may not be served to a postal service for purposes of establishing personal jurisdiction.

After this Court's order directing Plaintiffs to serve Chapiro in accordance with Local Rule 4.2(a), Plaintiffs' counsel provided the packet containing the Summons and the Complaint to the Clerk of Courts, who submitted to the United States postal service via certified mail on November 3, 2025. (Non-document entry of Nov. 3, 2025). The Clerk of Courts has not docketed a return receipt for the mailing, although Plaintiffs filed a Notice confirming that the packet had been delivered and left with an individual on November 8, 2025. (ECF Doc. 17-1). Delivery notwithstanding, there yet appears to be a fundamental problem with service of the summons and complaint on Chapiro. Although Plaintiffs claim that the address is one Chapiro regularly uses and lists on his legal contracts (ECF Doc. 17, p. 1), it does not appear to be a valid address for purposes of service of process.

Generally, service of a summons and complaint on an individual defendant must be made by (1) delivery to the individual personally; (2) leaving a copy at "the individual's dwelling or usual place of abode with someone of suitable age and discretion who resides there"; or (3) delivering a copy to an authorized agent. Fed. R. Civ. P. 4(e)(2). Service through other means may be available, should the means in Rule 4(e)(2) prove fruitless. *See, e.g.*, Fed. R. Civ. P. 4(e)(1); Local R. Civ. P. 4(c), (l); *and* Ohio R. Civ. P. 4.1 *et seq.* Service may also be made by

following state law for either the state where the case is brought or the state where service is made.[1] Fed. R. Civ. P. 4(e)(1). For certified mail service, Ohio rules provide that service must be made on an "address," and direct that the postal employee should "show to whom delivered, date of delivery, and address where delivered." Ohio R. Civ. P. 4.1(A)(1)(a).

"Service of process must be made in a manner reasonably calculated to apprise interested parties of the action and to afford them an opportunity to respond." *Hook v. Collins*, 2017-Ohio-976, 2017 WL 1034605, *2 (Ohio Ct. App. Mar. 9, 2017). For service on an individual defendant, such as Chapiro, Ohio courts require that "[i]individuals must be served at their 'usual place of residence[.]'" *Id.*, quoting Ohio R. Civ. P. 4.1(A). Service of process at an individual's business address may be proper, if the defendant has "such a habitual, continuous or highly continual and repeated physical presence at the business address that the party ordering the service of process would have reasonable grounds to calculate that the service would promptly reach the party being served." *Hall v. Silver*, 2018-Ohio-1706, 2018 WL 2074743, *3 (Ohio Ct. App. May 2, 2018). A presumption of proper service may be rebutted by evidence that the defendant did not reside or receive mail at the address to which the certified mail service of summons and complaint was sent. *Hook*, 2017 WL 1034605, at *3.

On the Proof of Service form, counsel for Plaintiffs affirms that the summons and complaint were mailed via certified mail to 300 Lenora Street, #787, Seattle, WA, 98121. (ECF Doc. 16, p. 2). However, searching for that address returns the result of a business: The Mailbox Seattle. *See Google Maps* results for 300 Lenora St., Seattle, WA at

---

[1] Local Rule 4.1 looks to Ohio Rules of Civil Procedure for service of the summons and complaint, but does not affect other means of service permitted by the Federal Rules of Civil Procedure. Looking to Washington State, where Plaintiffs assert Chapiro maintains an address, Washington law states that service of a summons and complaint may be made to the defendant's "usual mailing address" but that the "'usual mailing address' does not include a United States postal service post office box" for purposes of perfecting personal service. Wash. Rev. Code § 4.28.080(15).

4

https://maps.app.goo.gl/YT9HUXicX447JSCy5 (last accessed Jan. 2, 2026). And The Mailbox Seattle advertises private mailbox services so that customers can "use a street address instead of a residential address or P.O. Box" and will accept and/or forward mail on their customers' behalf. *The Mailbox Seattle*, Mailbox Rental, https://www.mailboxseattle.com/Home-Business/Mailbox-Rental (last accessed Jan. 2, 2026). Thus, this address is not where Chapiro resides and is invalid for personal service as his usual place of residence under Ohio rules.

It also does not appear that this address is a valid business address to satisfy Ohio and Federal rules requiring that an address be "reasonably calculated" to reach Chapiro. Ohio courts look to whether a party has a "highly continual and repeated physical presence at the business address" to which service was sent. *Hall*, 2018 WL 2074743, at *3. But as Plaintiffs have repeated in this case, Chapiro has a nomadic lifestyle and may not reside in any one location for long. (ECF Doc. 1, Compl., ¶ 8 "Defendant . . . has no known permanent residence and relocates approximately every sixty days . . . ."). Moreover, it is not clear that this address at The Mailbox Seattle is used as Chapiro's business address. The jointly owned corporation at issue, which Plaintiff Rapport names as co-plaintiff, Radian Industries, was incorporated in the state of Wyoming and has an address for service in that state. (ECF Doc. 2-1, p. 10). Also, Plaintiff Rapport names his residential address in Cleveland as the "principal place of business for hardware" for co-plaintiff Radian Industries, and has mailed a document to Chapiro purporting to fire him for cause to that Cleveland address. (*Id.* at p. 12; ECF Doc. 2-3, pp. 1-7). It thus appears that Chapiro has used other addresses in connection with his business dealings, and Plaintiff Rapport has used other business addresses in prior attempts to reach Chapiro. Without commenting on the validity of the other addresses, it nonetheless appears that the Seattle address

does not appear to be of the type where Chapiro maintains a "highly continual and repeated physical presence" for purposes of satisfying Ohio rules for service at an individual's business.

Chapiro may yet reside elsewhere. Appended to Plaintiffs' complaint is a document that they purport to be Chapiro's resume posted on LinkedIn. While that document does not list an address, it does state that Chapiro is in the "Denver Metropolitan Area." (ECF Doc. 2-3, p. 8). This also leans against Plaintiffs' effecting proper service at the Lenora address in Seattle.

In all, it is not clear where Chapiro resides or regularly conducts business. However, it is apparent that delivery to the Lenora address in Seattle does not comport with service of process under federal, local, Ohio, or Washington rules of civil procedure. Service has not yet been perfected against Chapiro.

### B.    Even if service is perfected, personal jurisdiction may still be lacking

My inquiry does not end with the perfection of service issue. Because Plaintiffs have asked the court to enter judgment against a defendant who has not appeared, this Court must first satisfy itself that it has personal jurisdiction over the defendant before it may enter default. *Ford Motor Co. v. Cross*, 441 F. Supp. 2d 837, 845 (E.D. Mich. 2006). "Personal jurisdiction over a defendant is a threshold issue that must be present to support any subsequent order of the district court, including entry of the default judgment." *Citizens Bank v. Parnes*, 376 F. App'x 496, 501 (6th Cir. 2010). This is particularly so where the defendant cannot assert his rights, because "personal jurisdiction flows from the Due Process Clause. . . . [and] it should not be waived unwittingly." *Blessing v. Chandrasekhar*, 988 F.3d 889, 898 (6th Cir. 2021). Furthermore, I am mindful that "the due process rights of a defendant should be the courts' primary concern where personal jurisdiction is at issue." *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1262 (6th Cir. 1996).

6

Here, Plaintiffs assert that this Court has subject matter jurisdiction under both federal question jurisdiction and diversity jurisdiction – with diversity jurisdiction vesting because Plaintiff Rapport is domiciled in Ohio and Plaintiff Radian has its principal place of business in Ohio, Defendant is not domiciled in Ohio, and the controversy exceeds $75,000. (ECF Doc. 1, Compl., ¶¶ 2, 8).

A federal court sitting in diversity may exercise personal jurisdiction over an out-of-state defendant only if a court of the forum state could do so.[2] *Blessing*, 988 F.3d at 901. Determining whether a state court has personal jurisdiction over a nonresident defendant is a two-step process: first, the cause of action must arise from the type of conduct listed in Ohio's longarm statute; next, if the longarm statute is satisfied, the court must determine whether its exercise of personal jurisdiction over the nonresident defendant comports with his federal due process rights. *Id.*

Ohio's longarm statute provides that a court may exercise personal jurisdiction over an individual in a cause of action arising from that person's "transacting any business in this state." Ohio Rev. Code § 2307.382(A)(1).

Plaintiffs assert that Defendant "designated Plaintiff's Cleveland address as the business location," including in the original governing document between the parties. (ECF Doc. 1, Compl., ¶ 10). Plaintiffs also assert that Defendant has purposefully availed himself of Ohio such that he should reasonably anticipate being haled into court in this district for "conduct

---

[2] A state may invoke either general or specific personal jurisdiction over a defendant. *Power Invs., LLC v. SL EC, LLC*, 927 F.3d 914, 917 (6th Cir. 2019), citing *Daimler AG v. Bauman*, 571 U.S. 117, 127 (2014) and *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985). General jurisdiction applies when the defendant's contact with the forum state are "so continuous and systematic as to render the defendant essentially at home" there. *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Plaintiffs make no allegations that Chapiro is "essentially at home" in Ohio such that general jurisdiction would apply (*see* ECF Doc. 1, Compl., ¶¶ 5, 7-8); I therefore focus this discussion on specific jurisdiction.

undertaken in his corporate capacity on behalf of an Ohio-based company," *i.e.*, Radian Industries, Inc. (*Id.* ¶ 11).

It could be that Plaintiff Radian Industries, Inc. maintains a presence in Ohio sufficient to establish that "transacting any business" on its behalf would confer personal jurisdiction on Chapiro. But I also note that Radian Industries, Inc. was registered as a for profit corporation in the State of Wyoming, with a registered agent in Sheridan, Wyoming, and listed Chapiro (and the Lenora address) as its incorporator. (ECF Doc. 1, Compl., ¶ 2; ECF Doc. 2-1, p. 10). On other documents, Rapport and Chapiro list Plaintiff Rapport's address in Cleveland, Ohio as the "principal place of business for hardware." (*Id.* at p. 12). Assuming arguendo that Radian Industries maintained a location in Ohio and that Chapiro may have conducted business on its behalf using the "principal place of business for hardware" address, Ohio's longarm statute may be satisfied.

But even presuming that Ohio's longarm statute is narrowly satisfied, federal due process may not be.

"The Due Process Clause of the Fourteenth Amendment limits a State's power to bind an out-of-state defendant to a judgment of its courts." *Power Invs., LLC v. SL EC, LLC*, 927 F.3d 914, 917 (6th Cir. 2019), citing *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 291, (1980). The Sixth Circuit applies a three-part test to determine whether the exercise of personal jurisdiction comports with due process: First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence there; second, the claims must arise out of or relate to the defendant's contacts with the forum; and third, the acts of the defendant or consequences caused by him must have a substantial enough connection with the

forum state to make the exercise of jurisdiction over the defendant reasonable. *Sullivan v. LG Chem, Ltd*., 79 F.4th 651, 670 (6th Cir. 2023) (internal quotations omitted).

The defendant must "purposefully avail" himself of "the privilege of conducting activities within the forum State, thus invoking the benefits and protections of its laws." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985) (internal citations omitted). Purposeful availment means that the "contacts must be the defendant's own choice and not 'random, isolated, or fortuitous.'" *Sullivan*, 79 F.4th at 671, quoting *Ford Motor Co. v. Montana Eighth Jud. Dist. Ct.*, 592 U.S. 351, 359 (2021). The contacts "must show that the defendant deliberately 'reached out beyond' its home—by, for example, 'exploiting a market' in the forum State or entering a contractual relationship centered there." *Ford Motor Co.*, 592 U.S. at 359, quoting *Walden*, 571 U.S. at 285.

And because the defendant is not "at home" in the forum state, the plaintiff's claims must arise out of or relate to the defendant's contacts with the forum. *Ford Motor Co.*, 592 U.S. at 359, quoting *Daimler*, 571 U.S. at 127. This claims-based determination is interrelated with the purposeful-availment prong, and looks to whether the defendant's deliberate actions in Ohio have a sufficient connection to the alleged harms caused here. *See Malone v. Stanley Black & Decker, Inc*., 965 F.3d 499, 503-04 (6th Cir. 2020). The out-of-state defendant may be subject to the forum state's jurisdiction if the defendant's "efforts are 'purposefully directed' toward residents of another State." *Burger King Corp.*, 471 U.S. at 476. Notably, this determination depends on the defendant's contact with the forum state, "not the defendant's contacts with persons who reside there." *Walden v. Fiore*, 571 U.S. 277, 285 (2014). With respect to a plaintiff's allegations of tortious conduct, jurisdiction may be established if the defendant intentionally committed a tortious action that was expressly aimed in the forum state. *See Calder*

*v. Jones*, 465 U.S. 783, 789 (1984). But it is well-settled that injury to an in-state resident alone is insufficient to establish personal jurisdiction over the defendant. *See, e.g.*, *Blessing*, 988 F.3d at 904-05.

And this is where my due process analysis becomes troubling. My review of Plaintiffs' claims does not show that Chapiro intended to avail himself of the Ohio forum. Rapport emailed Chapiro seeking business advice. (ECF Doc. 1, Compl., ¶ 31). After the two became engaged in business dealings together, Chapiro incorporated Radian in the state of Wyoming, not Ohio. (*Id.* at ¶¶ 2, 18; ECF Doc. 2-1, pp. 4). Radian's corporate documents show that the parties agreed to be governed by the laws of the State of Wyoming. (ECF Doc. 2-1, p. 46). Later licensing agreements between the parties also invoke the laws of the State of Wyoming. (*Id.* at p. 49). And although he entered into a business with Rapport and may have used Rapport's address in Ohio for certain business-related documents, (*id.* at p. 56), those documents do not show that Chapiro intended to avail himself of the benefits and protections of Ohio law or that he intentionally reached out beyond his home state. Rather, using Rapport's address shows he was in business with an officer who resides in Ohio. My review of the documents does not reveal that Chapiro was ever present in Ohio, directed any marketing in Ohio, or had contact with any resident of Ohio other than Plaintiff himself. This is insufficient to establish personal jurisdiction under the first two prongs.

Furthermore, the reasonableness of exercising personal jurisdiction requires that a nonresident defendant's contacts with the forum state are sufficient to comport with "traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940). Physical presence in the forum state is not required, although it is relevant to the inquiry. *Walden*, 571 U.S. at 285. But "the plaintiff

cannot be the only link between the defendant and the forum," *Walden*, 571 U.S. at 285. An out-of-state defendant's business transactions causing harm to an Ohio plaintiff may be enough to confer personal jurisdiction under the reasonableness prong, even if it is not met under the purposeful availment prong. *See generally Blessing*, 988 F.3d at 905 (collecting cases where personal jurisdiction was found in nonresident defendants' online business dealings in the forum state). However, the Sixth Circuit has cautioned that the state's exercise of personal jurisdiction should consider whether the defendant's contacts in the forum state were based on a preexisting relationship with the plaintiffs, whether the forum state was the "focal point" of the communications, whether the business transaction was over a substantial period of time, and similar considerations regarding the extent of the relationship between the defendant and his dealings with a plaintiff in the forum state. *See id.*

It is insufficient to rely on a defendant's "'attenuated contacts'" with persons affiliated with the forum state, or on the plaintiff's "'unilateral activity'" there. *Walden v. Fiore*, 571 U.S. at 286, quoting *Burger King*, 471 U.S. at 475; *see also Hanson v. Denckla*, 357 U.S. 235, 253 (1958) *and Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 417 (1984) (same).

And this is again the issue I cannot satisfactorily resolve. Rapport states that Chapiro used Rapport's Cleveland address for his business dealings on Radian's behalf and that those contacts were substantial enough that Chapiro should understand himself to be amenable to suit here. But the documents appended here demonstrate that Chapiro's dealings with the Ohio forum were centered around Rapport himself, not Radian as a business, or Chapiro's transactions on its behalf. Rapport points to the SAMS notice to show that Chapiro used his address for Radian business dealings. (*See* ECF Doc. 2-1, p. 56). But on Radian documents, including the articles of incorporation and the founder's agreement, the Lenora address is listed. (ECF Doc. 2-1, pp. 10,

11

47, ECF Doc. 2-2, p. 2). Neither were Chapiro's contacts with investors on Radian's behalf directed to investors in Ohio, even if his alleged contacts caused harm to Rapport here. (*See generally* ECF Doc. 2-9, describing Chapiro's alleged sabotage of funding opportunities and reputational harm to Rapport). I also note that Rapport attempted to notice Chapiro of his performance review and termination letter by directing it to Radian Industries, Michael Chapiro – and lists his own Cleveland address in both the return and subject lines. (ECF Doc. 2-3, pp. 1-7).

The few contacts Chapiro has had in Ohio, even those related to his business dealings for Radian, appear to be of an attenuated nature. Although Chapiro is alleged to have caused harm to Rapport in Ohio, and conducted business on behalf of Radian, also located here in some respects, those contacts were all done through Rapport himself, and Rapport's address. Radian did not maintain an address in Ohio separate from Rapport's address. In effect, Rapport is Chapiro's only link with the Ohio forum. And that link, regardless of the extent of the harm, does not appear to be enough to confer this federal district court with personal jurisdiction over Chapiro.

That said, a plaintiff is not required to allege personal jurisdiction in the complaint. *Walker v. Concoby*, 79 F. Supp. 2d 827, 835 (N.D. Ohio 1999). This Court presently has only Plaintiffs' initial filings before it. And even though the complaint and its addenda are extensive, they may not be exhaustive. From what is presently available, personal jurisdiction over Chapiro appears lacking, and any judgment the court might render against him would be void.

I therefore recommend that the District Court deny Plaintiffs' Application for Default for want of personal jurisdiction.

### C.    Deadline for Perfecting Service

Notwithstanding the above recommendation, personal jurisdiction over Chapiro may yet result. Furthermore, personal jurisdiction is an individual right and may be waived by a defendant, should he choose to avail himself of this forum. *E.g.*, *Days Inns Worldwide, Inc.*, 445 F.3d at 905. I therefore return to the court's present problem: ensuring proper service on Chapiro.

The complaint in this case was initially filed on September 29, 2025. Under Rule 4(m), if service is not perfected against the defendant within 90 days, a court may dismiss the plaintiff's case without prejudice or order that service be made within a specified time. Fed. R. Civ. P. 4(m). The dismissal can be on the court's own motion "after notice to the plaintiff." *Id.*

If plaintiff shows good cause for the failure to serve, then the court "must extend the time for service for an appropriate period." *Id.* The Sixth Circuit has set forth the following balancing test for extending time for service:

> (1) whether an extension of time would be well beyond the timely service of process;
>
> (2) whether an extension of time would prejudice the defendant other than the inherent prejudice in having to defend the suit;
>
> (3) whether the defendant had actual notice of the lawsuit;
>
> (4) whether the court's refusal to extend time for service substantially prejudices the plaintiff, i.e., would the plaintiff's lawsuit be time-barred;
>
> (5) whether the plaintiff had made any good faith efforts to effect proper service of process or was diligent in correcting any deficiencies;
>
> (6) whether the plaintiff is a pro se litigant deserving of additional latitude to correct defects in service of process; and
>
> (7) whether any equitable factors exist that might be relevant to the unique circumstances of the case.

*United States v. Oakland Physicians Med. Ctr., LLC*, 44 F.4th 565, 568-69 (6th Cir. 2022). But "good cause" for failing to meet Rule 4(m)'s 90-day requirement means more than mere

inadvertence or miscommunication. *Koehn v. 313 Presents, LLC*, 649 F. Supp. 3d 465, 467 (E.D. Mich. Jan. 4, 2023).

The 90 days for perfecting service on Chapiro expired on December 29, 2025. However, I determine that factors exist to counsel granting an extension for Plaintiffs to perfect service on Chapiro. I first note that Plaintiffs have been diligent in attempting to perfect service on Chapiro, and have responded to this Court's earlier orders on the matter. (*See generally Docket.*). The mistake in sending to an invalid address is not readily apparent on its face – indeed, The Mailbox Seattle advertises its services specifically to avoid appearing as if mail is being sent to a P.O. Box. As of the time of this writing, less than two weeks have passed since the expiration of the 90-day deadline, so it does not appear that Chapiro will be unduly prejudiced by the delay. Furthermore, Plaintiffs' counsel has represented that he has emailed documents to Chapiro throughout this case, again demonstrating minimal prejudice to Chapiro. (*See, e.g.*, ECF Doc. 11). Finally, I note that Ohio rules provide for up to six months to perfect service. Ohio R. Civ. P. 4(E). All these reasons countenance extension.

However, with this extension, I urge Plaintiffs to be mindful that any re-attempt at service must be made such that it confers personal jurisdiction over Chapiro according to the applicable rules of procedure. Even though Chapiro or his counsel may be aware of this lawsuit in the Northern District of Ohio, notice alone does not suffice to confer this Court's exercise of personal jurisdiction over a defendant. And even though Chapiro may not have a regular residential address for more than a few weeks at a time, email service of the summons and complaint does not comport with the Ohio rules of civil procedure, nor does it satisfy the Court's exercise of personal jurisdiction. Ohio requires that the summons and the complaint must be personally served in accordance with Rule 4.1 *et seq*. Only thereafter may a defendant agree to

service of other papers by email. *McLemore v. Clinton Cnty. Sheriff's Off.*, 214 N.E.3d 723, 738 (Ohio Ct. App. 2023) (explaining that Ohio rules require that a summons and complaint be issued in strict compliance with Rule 4.1 through 4.6, and that emailed attempts or personal attempts by the party to serve the complaint on the defendant were insufficient).

Therefore, pursuant to the referral order conferring pretrial management authority to me, (non-document entry of Oct. 29, 2025), I extend the time for Plaintiffs to perfect service on Defendant until March 30, 2026. Plaintiffs are hereby noticed that I will recommend dismissal without prejudice should service not be perfected by that date.

## III.  Conclusion

I recommend that the District Court deny Plaintiffs' application to clerk for entry of default (ECF Doc. 18) for want of personal jurisdiction over Defendant Chapiro. Plaintiffs have until March 30, 2026 to perfect service, or else risk a recommendation of dismissal without prejudice.

Dated: January 9, 2026

REUBEN J. SHEPERD
UNITED STATES MAGISTRATE JUDGE

### OBJECTIONS

#### Objections, Review, and Appeal

Within 14 days after being served with a copy of this report and recommendation, a party may serve and file specific written objections to the proposed findings and recommendations of the magistrate judge. Rule 72(b)(2), Federal Rules of Civil Procedure; *see also* 28 U.S.C.§ 636(b)(1); Local Rule 72.3(b). Properly asserted objections shall be reviewed de novo by the assigned district judge.

\* \* \*

15

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; "a general objection has the same effect as would a failure to object." *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991). Objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, *2 (W.D. Ky. June 15, 2018) quoting *Howard*. The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).