IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| Nathan Rapport, and<br>Radian Industries Inc.,<br><br>    *Plaintiffs*,<br><br>v.<br><br>Michael Chapiro,<br><br>    *Defendant.* | Case No. 1:25-cv-02071-CEF<br><br>Judge Charles E. Fleming |

### PLAINTIFFS' OBJECTIONS TO REPORT AND RECOMMENDATIONS

Plaintiffs, through their undersigned counsel, pursuant to 28 USC § 636(b)(1), Rule 72(b), Fed. R. Civ. P., and Local Rule 72.3(b), hereby respectfully submit the following objections to the Report and Recommendations ("Opinion") of Magistrate Judge Sheperd dated January 9, 2026 (ECF No. 19).

### I. INTRODUCTION AND PROCEDURAL HISTORY

**A. Nature of the Action**

The events precipitating this legal action are detailed in the Complaint (ECF No. 1). Defendant is a former officer of Plaintiffs' now-dissolved company, Radian Industries (the "Company"), which Plaintiff Rapport formed to commercialize his intellectual property, including an invention related to navigational technology. Plaintiff Rapport has provided a sworn statement to the Court[1] that the navigational technology in dispute constitutes a defense article under ITAR based on its empirically observed performance, and has provided sealed exhibits supporting this claim.

**B. Service of Process History**

Plaintiffs filed the Complaint in this matter on September 30, 2025 (ECF No. 1). On October 7, Plaintiffs' counsel mailed the Summons, Complaint, and all of the unsealed Exhibits via certified

---

[1] However, it appears that the Clerk has improperly sealed this statement, among other critical documents for this case.

1

mail to Defendant's business address (the "Address") of record (300 Lenora St., #787, Seattle, WA 98121). In his October 31st Declaration submitted with Plaintiffs' Motion for a TRO (ECF 12), Plaintiffs' counsel specified that the foregoing address was Defendant's "business address of record", because, among other things, Defendant Chapiro executed the Founders Agreement, one of the operative documents in this case (ECF 2-1 p. 47, ID 173), using that address.

The United States Postal Service (USPS) did not return the mailing as undeliverable, but the accompanying return-receipt card was returned to counsel. As noted in counsel's Declaration, this suggests that the mailing was delivered to Defendant's mailbox and retrieved. Direct evidence also supports this belief: Defendant demonstrated actual notice of Plaintiffs' Complaint by October 14 by reaching out to Plaintiffs' counsel regarding the lawsuit via email. Defendant also indicated he was coordinating with counsel Zack Shapiro of Rains LLP, who communicated on Defendant's behalf on October 21 to baselessly accuse Plaintiffs' counsel of "name-renting" this legal action and "putting your name on a matter that is just *pro se* in disguise." In these communications, Defendant and his counsel amply demonstrated awareness of specific claims in Plaintiffs' case. Defendant and his counsel both declined Plaintiffs' requests to provide an address for service or to waive service of process.

On November 3, pursuant to the Court's Order of October 29, 2025 and the provisions of Local Rule 4, the Clerk placed the Summons and Complaint in the U.S. mail for service by certified mail. The following day, on November 4, Plaintiffs moved for an *ex parte* TRO (ECF No. 12).

On November 6, Magistrate Judge Sheperd filed a Report and Recommendation ("R&R") (ECF No. 13) to deny without prejudice Plaintiffs' motion for an *ex parte* TRO on the grounds that "[p]roper service under applicable local rules must first be fully attempted before an ex parte TRO may proceed." Plaintiffs objected to Judge Sheperd's Report and Recommendation (ECF No. 14) which is still pending before the Court.

On November 8, the USPS delivered the Clerk-mailed Summons and Complaint to Defendant's address and electronically recorded the package as "Delivered, Left with Individual."

2

At this point, service was affected pursuant to Fed. R. Civ. P. 4(e)(1) and Ohio R. Civ. P. 4.1(A)(1)(a).

Defendant has expressed strong views regarding the merits of Plaintiffs' case via informal email communication to Plaintiffs' counsel. These communications were included in a supplemental exhibit to Plaintiffs' Motion (and Amended Motion) for Alternative Service. (ECF 10, 11).[2] Despite having received actual notice of the Summons and Complaint, along with extensive exhibits and subsequent filings, Defendant has not cooperated with service, nor filed any responsive pleading, nor made any entry of appearance.

Under Fed. R. Civ. P. 12(a)(1)(A)(i), Defendant was required to formally answer or otherwise respond within 21 days of service (or seek and obtain an appropriate extension). That deadline passed on December 1, 2025. Plaintiffs filed a return of service and a Notice of Perfected Service and accompanying proof on November 28 (ECF No. 16, 17).

On December 3, Plaintiffs submitted an Application to the Clerk for entry of default under Rule 55(a) (ECF No. 18), which remains unacted upon by the Clerk to date, although there is nothing in the Rule to suggest that the entry of default under Rule 55(a) is anything other than a mandatory and non-discretional act by the Clerk of Courts.

On January 9, Magistrate Judge Sheperd submitted an Opinion (ECF No. 19) recommending the denial of Plaintiffs' application for a default finding, the objection of which is the subject of this filing.

## II.  SUMMARY OF THE REPORT AND RECOMMENDATION

According to the Magistrate Judge, the Court does not have personal jurisdiction over Chapiro because (a) service has not been perfected, and (b) even if service has been perfected, there is a lack of specific personal jurisdiction.

---

[2] It appears the Clerk improperly sealed these communications (as well as counsel's Declaration submitted with Plaintiffs' Motion for a TRO, which specified that Defendant's Address at 300 Lenora Street is a business address) from the public in contravention of its own Standing Order on sealing documents.

As to whether service has been perfected, the Magistrate Judge concluded that the address used by Plaintiffs in serving Defendant Chapiro "does not appear to be a valid address for purposes of service of process" (Opinion at 3), as Fed. R. Civ. P. 4(e)(1) requires. The Magistrate Judge recites the hornbook requirement under Ohio law, that the service must be made in a manner that is reasonably calculated to apprise interested parties of the action and to afford them an opportunity to respond. Nevertheless, the Magistrate Judge reasons, "The summons and complaint may not be served to a postal service for purposes of establishing personal jurisdiction." (Opinion at 3.)

The Opinion addresses whether the Lenora Street address was either a personal residence or a regular business address to satisfy the requirements for proper service.[3] As to whether the Lenora Street was a valid business address to satisfy the Ohio rule, the Court recognized that "service of process at an individual's business address may be proper" if the defendant had "such a habitual, continuous or highly continual and repeated physical presence at the business address that the party ordering the service of process would have reasonable grounds to calculate that the service would promptly reach the party being served," citing *Hall v. Silver*. (Opinion at 4.) Relying primarily on his own research (bringing up new evidence from Google Maps and *The Mailbox Seattle*'s website), the Magistrate Judge concludes that the Address is not a business address because it is a private mailbox. The Opinion concludes that "it is not clear that this address at The Mailbox Seattle is used as Chapiro's business address" and further concludes that "the Seattle address does not appear to be of the type where Chapiro maintains a 'highly continual and repeated physical presence' for purposing purposes of satisfying the Ohio rules of service." (Opinion at 5.) The Magistrate Judge also concludes that because the address is a postal service, it cannot be used for service.

The Magistrate Judge further reasons that even if the address were a business address, then Plaintiffs would have to show that the defendant has a "highly continual and repeated physical presence at the business address." The Magistrate Judge concludes this standard is not met based on

---

[3] While Plaintiffs never contended that the Lenora Street address is a personal residence, the Magistrate Judge nonetheless concluded that the Lenora Street address is not "where Chapiro resides" and therefore is invalid for personal service as his "usual place of residence" under Ohio rules. (Opinion at 5.)

4

his evidence that the address: (1) is not Radian's address; (2) is a private mailbox; (3) is not Chapiro's address because Chapiro's LinkedIn social media indicates he's in the "Denver Metropolitan Area."

The Magistrate Judge further concludes that even if service has been perfected, personal jurisdiction may still be lacking. The Magistrate Judge states that to determine whether a court has personal jurisdiction over the defendant, two elements must be met: (1) Ohio's longarm statute, and (2) defendant's due process rights under the 14th amendment.

As to the longarm statute, because Radian Industries is incorporated in Wyoming, the Magistrate Judge concludes that Chapiro did not transact any business in Ohio. However, the Magistrate Judge acknowledges that, if Radian had a location in Ohio and Chapiro conducted business on its behalf, then the longarm statute may be "narrowly satisfied." (Opinion at 8.)

The Magistrate Judge then analyzes whether exercising personal jurisdiction comports with the defendant's due process rights under the 14th amendment, utilizing the Sixth Circuit's three-part test under *Sullivan* (*Sullivan v. LG Chem. Ltd.*, 79 F.4th 651, 670 (6th Cir. 2023)).  First, as to purposeful availment: Magistrate Judge Sheperd acknowledges (Opinion at 9) that entering a contractual relationship would count under this purposefulness sub-test. Second, as to relevance: The Magistrate Judge concludes relevance is not met because: (1) Radian was incorporated in Wyoming; (2) documents show agreements invoking laws of Wyoming; and (3) the documents that used Rapport's address in Ohio don't expressly state that Chapiro intended to avail himself of Ohio's jurisdiction. Third, as to reasonableness: The Magistrate Judge notes that business transactions causing harm to an Ohio plaintiff may be enough; however, he writes that Chapiro's dealings with Ohio were centered around Rapport rather than Radian, and reasons that because Radian did not maintain an address in Ohio separate from Rapport's address, Rapport is Chapiro's only link with the Ohio forum. (Opinion at 8, 9.)

5

The Magistrate Judge concludes that that personal jurisdiction over Defendant "appears lacking", and that any default judgment entered without jurisdiction would be void.[4]

Plaintiffs object to these conclusions *seriatim*.

### III. SERVICE HAS BEEN PERFECTED

In his Opinion on the perfection of service, the Magistrate Judge arrived at two conclusions that were clearly erroneous and a basis for rejection under 28 USC § 636(b)(1), Rule 72(b), Fed. R. Civ. P., and Local Rule 72.3(b); namely, that (1) the Lenora Street address used for service of process is not a business address, and (2) that private mailbox services cannot be used as a matter of law for service of process.[5] Plaintiffs address both of these points shortly.

**A. The Mailing Address is a Business Address**

In his Opinion, Magistrate Judge Sheperd engages in *sua sponte* research to support his thesis that the Defendant in this matter has not been served, presenting new evidence (*e.g.*, URLs, advertising copy) to the Court regarding the nature of the address used for service, and ultimately takes a position contradicting the sworn statement provided by the undersigned in his October 31st Declaration. (ECF No. 12.)

The Magistrate Judge correctly identifies the address as belonging to a private mailbox company; however, he fails to evaluate whether Defendant uses his address as his business address. The Global Legal Entity Identifier (GLEIF) database, which is regularly relied upon by courts, law firms, and financial institutions, identifies the Address as the headquarters of Chapiro's business, Advanced Human Engineering LLC.[6][7][8] Advanced Human Engineering LLC engaged in numerous financial transactions with Radian Industries (Compl. Exh. D1, ECF 2-10, ID 337), including transactions directly underlying multiple claims in this litigation. And, as noted above, Chapiro used

---

[4] Rule 4(m) Extension: The Magistrate Judge granted Plaintiffs an extension of time to perfect service under Rule 4(m) until March 30, 2026. This extension is indeed curious, and logically inconsistent with the Magistrate Judges indication that personal jurisdiction may be absent in this case.
[5] Magistrate Judge's actual statement that "postal service", i.e., USPS, cannot be used makes no sense in this context. The Magistrate Judge must have meant private mailbox or P.O. Box in his statement.
[6] https://lei.info/254900GZSQKHHN8TG097
[7] https://search.gleif.org/#/record/254900GZSQKHHN8TG097
[8] https://lei-luxembourg.lu/informations-detaillees/35321012/254900GZSQKHHN8TG097/advanced-human-engineering-llc/

his Address in signing the Founders agreement, one of the key operative documents from which many of the Counts in this case stem. This directly refutes the Magistrate Judge's claim that the Address is not a valid business address, and is a clear basis for rejecting his conclusion.

**B. The Mailing Address was Valid for Service under Ohio Law**

As the Magistrate Judge recognized, service may be affected in accordance with state law under Fed. R. Civ. P. 4(e)(1). It is hornbook law, recognized by the Court, that a presumption of proper service arises in the context of Plaintiffs having properly following the Federal and Ohio Rules in connection with service of process. (Opinion at 4).

In *United Home Fed. v. Rhonehouse*, the Ohio Court of Appeals expressly rejected the proposition that service to a non-residence mailbox such as a post office box is improper, holding instead that "service to a post office box is sufficient if it meets this test"—by which it refers to the standard articulated in *Mullane v. Central Hanover Bank & Trust Co.*, whereby service be "made to an address where there is a reasonable expectation that service will be delivered to the party." *United Home Fed. v. Rhonehouse*, 76 Ohio App. 3d 115.

When a defendant chooses an address for legal and corporate purposes, service to that address is *prima facie* reasonably calculated to give notice. Defendant cannot later disclaim that choice to defeat service. As *Rhonehouse* shows, even an affidavit from a defendant asserting that the complaint materials were not actually received is insufficient to defeat service once the *Mullane* standard is satisfied. In this matter, Defendant designated the Lenora Street address as the business address he chose when he drafted the Founders Agreement for Radian Industries, a binding legal instrument governing the parties' relationship; thus creating a reasonable expectation that service can be made there. (ECF 2-1 p. 47, ID 173.) Therefore, the *Mullane* standard and the subsequent Ohio requirements such as reflected in *Rhonehouse* are met, and service was therefore proper under Ohio R. Civ. P. 4.1(A)(1)(a).

**C. The Burden of Proof is Misallocated and there is Nothing to Rebut Presumption of Service**

Case precedent makes clear, "… the burden on the plaintiff is 'relatively slight,' and 'the plaintiff must make only a *prima facie* showing that personal jurisdiction exists in order to defeat dismissal.'" *Air Prods. & Controls*, 503 F.3d at 549 (quoting *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988). At the pre-discovery stage, factual disputes concerning personal jurisdiction and service facts that function as jurisdictional predicates are evaluated under a *prima facie* standard.

The undersigned's October 31 Declaration (ECF No. 12) states that the address used for service of process was a business address used by Chapiro, and supporting evidence of successful delivery was provided in Plaintiffs' Notice of Perfected Service (ECF No. 17). This satisfies the *prima facie* standard.

In his Opinion, the Magistrate Judge engages at some length in speculation over whether and to what extent Defendant frequents his mailbox. However, under *Mullane*, notice is sufficient where the method employed is "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950). The Magistrate Judge, in his Opinion, acknowledges that *The Mailbox Seattle* offers mail forwarding on their customers' behalf, but then fails to consider the strong likelihood that Defendant's business mail, which is essential for his business, is being continuously forwarded to his current physical residential address.

Rather than citing *Mullane*, the settled federal notice standard, the Magistrate Judge in his Opinion examines the question of service by reference to *Hall v. Silver*, an appeal from the Akron Municipal Court in Summit County, Ohio, which discusses "habitual" physical presence at a business address under state procedural rules. In *Hall*, the certified mail was returned unclaimed, and the court's analysis proceeds from a fundamentally different factual predicate than the one present here, where the certified mail was recorded as delivered and contacts from Defendant and his counsel provide confirmatory proof of actual service. *Hall*'s fact-bound discussion of physical

presence is a state-law gloss for the controlling Supreme Court due-process standard, and is inapposite here.

Nevertheless, the Magistrate Judge's Opinion attempts to replace the settled federal notice standard with a rule of its own making: that service at a business address should be conditioned on affirmative proof of a defendant's continual physical presence there. This requirement is found nowhere in Rule 4 or any controlling precedent. The Magistrate Judge's proposed condition is an unprecedented new standard, which negates the presumption of proper service without any direct evidence in support.[9]

Direct evidence more convincingly supports that Plaintiffs' assertion that Defendant did receive Plaintiffs' mailings to his Address by October 14th, as he would for any critical business correspondence. By attempting to shift this burden of evidence onto the Plaintiffs, the Magistrate Judge improperly adopts his own speculative evidence over the presumption of proper service under the law and the direct evidence provided. That was improper and is clearly erroneous and a basis for rejection under 28 USC § 636(b)(1), Rule 72(b), Fed. R. Civ. P., and Local Rule 72.3(b).

**D. The Magistrate Judge's Authority Does Not Compel a Contrary Conclusion**

The Magistrate Judge notes that a presumption of proper service may be rebutted by evidence that the defendant did not reside or receive mail at the address to which the certified mail service of summons and complaint was sent. (Opinion at 4). Yet here there is no evidence that mail was not received; only the speculation of the Magistrate Judge. In the *Hall* decision relied upon by the Magistrate Judge there was significant testimony by the defendant, the defendant's former secretary, and by affidavit and exhibit that defendant no longer worked at the address served, all to

---

[9] Evidence relied upon by the Magistrate Judge is neither direct nor compelling. In his Opinion, the Magistrate Judge points out that Defendant Chapiro's LinkedIn profile lists Defendant's location in the "Denver Metropolitan Area," and cites this in support of his argument that Defendant may not physically frequent his mailbox. However, Rapport's own LinkedIn profile erroneously lists him as residing in New York, New York. Although Rapport previously resided there, his LinkedIn location is out of date, and Rapport currently resides in Ohio, where he is a resident. LinkedIn is obviously not an authoritative or up-to-date source of location data. Meanwhile, Rapport's listed location on his X profile, which is available in the record (Compl. Exh. C2), also erroneously lists his location as Boston, MA, which was another city in which he previously resided; this further demonstrates an inconsistency in reasoning applied to Defendant but not to Plaintiff Rapport.

the effect that the defendant never received a copy of the Complaint, the totality of which the court found was sufficient to rebut the presumption of proper service. Unlike *Hall*, here, there is no direct evidence to rebut the presumption of proper service that follows from plaintiffs having followed the Federal Rules of Civil Procedure and the Ohio Civil Rules. Having followed the rules, Plaintiffs are entitled to a presumption of proper service. Nothing in the Magistrate Judge's report or recommendation is to the contrary on this point.

Indeed, all indications reflect that Defendant Chapiro *in fact* received service. The Magistrate Judge does not anywhere address this fact nor distinguish the *Rhonehouse* case relied upon by Plaintiffs in their Notice of Perfected Service (ECF No. 17). In *Rhonehouse*, actual mail delivery was made upon defendant William Rhonehouse, and the lower court concluded that actual service was made upon him. On appeal, Defendant submitted an affidavit in attempt to rebut the presumption of actual service but the lower court had found that affidavit not credible in view of the fact that his spouse had received actual service of process at the same address. The Court of Appeals in *Rhonehouse* agreed, stating "service need not be made to the parties' actual address so long as it is made to an address where there is a reasonable expectation that service will be delivered to the party," and concluded that "service to a post office box is sufficient if it meets this test." The Magistrate Judge nowhere addresses nor distinguishes *Rhonehouse*, and his conclusion to the contrary is clearly erroneous and a basis for rejection under 28 USC § 636(b)(1), Rule 72(b), Fed. R. Civ. P., and Local Rule 72.3(b).

### IV. THE COURT HAS PERSONAL JURISDICTION OVER DEFENDANT

**A. Legal Standard for Personal Jurisdiction**

In his Opinion, the Magistrate Judge explains, "Determining whether a state court has personal jurisdiction over a nonresident defendant is a two-step process: first, the cause of action must arise from the type of conduct listed in Ohio's longarm statute; next, if the longarm statute is satisfied, the court must determine whether its exercise of personal jurisdiction over the nonresident defendant comports with his federal due process rights." Although the Magistrate Judge did not

10

arrive at many definitive conclusions adverse to the Plaintiffs on these issues, we address both of these elements.

Regarding due process, the Magistrate Judge declines to take a clear position; rather, he equivocates by stating that it "may not be satisfied." Nevertheless, he proceeds to recommend that the District Court deny Plaintiffs' Application for Default "for want of personal jurisdiction," implicitly resolving the question against Plaintiffs without making an express finding.

**1. The Ohio Longarm Statute Is Satisfied**

In his Opinion, the Magistrate Judge explains, "Ohio's longarm statute provides that a court may exercise personal jurisdiction over an individual in a cause of action arising from that person's 'transacting any business in this state.' Ohio Rev. Code § 2307.382(A)(1)." (Opinion at 7.)

The Magistrate Judge continues, "Assuming arguendo that Radian Industries maintained a location in Ohio and that Chapiro may have conducted business on its behalf using the 'principal place of business for hardware' address, Ohio's longarm statute may be satisfied." Radian Industries did indeed maintain its headquarters in Ohio, and Defendant Chapiro did indeed conduct business on the Company's behalf on numerous occasions; these activities included: submitting federal grant proposals, soliciting investments, and attending defense conferences paid for by Company funds, all on the Company's behalf. While the Magistrate Judge concedes here that Ohio's longarm statue may be "narrowly satisfied", Plaintiffs maintain that the Ohio long-arm statute is substantially satisfied in this case.

**2. The *Sullivan* Standard is Met Here**

The Magistrate Judge expresses his belief that exercising personal jurisdiction over Chapiro in this Court does not meet the first two prongs of the *Sullivan* test, writing, "My review of the documents does not reveal that Chapiro was ever present in Ohio, directed any marketing in Ohio, or had contact with any resident of Ohio other than Plaintiffs himself." The Magistrate Judge also concluded that exercising personal jurisdiction over Chapiro in this court does not meet the "reasonableness" element of the *Sullivan* test, characterizing Defendant's contacts with Ohio as

11

"attenuated" and Plaintiff Rapport's activities in Ohio as "unilateral," and concludes, "[i]n effect, Rapport is Chapiro's only link with the Ohio forum." (Opinion at 12).[10]

## A. The *Mileti* Case

The Sixth Circuit has expressly held that a court establishes personal jurisdiction over a nonresident defendant when that defendant deliberately transacts business by negotiating and executing a contract through communications directed to an Ohio resident. *Cole v. Mileti*, 133 F.3d 433, 436 (6th Cir. 1998) ("If, as here, a nonresident defendant transacts business by negotiating and executing a contract … to an Ohio resident, then the defendant has purposefully availed himself of the forum by creating a continuing obligation in Ohio. … Furthermore, if the cause of action is for breach of that contract, as it is here, then the cause of action naturally arises from the defendant's activities in Ohio. … Finally, when we find that a defendant … purposefully availed himself of the forum and that the cause of action arose directly from that contact, we presume the specific assertion of personal jurisdiction was proper.").

Here, Defendant Chapiro served as the CEO of Radian Industries, a company headquartered and operated in Ohio, and entered into multiple business contracts and transactions with both Radian and Plaintiff Rapport, an Ohio resident.[11] Defendant also used Plaintiff Rapport's Cleveland address as the designated business location for filings and notices, including the federal System for Award Management, submitted federal grant proposals on behalf of Radian, and was well-aware that Radian's physical operations, hardware, and development activity were based in Ohio.

---

[10] The Magistrate Judge suggests Wyoming as the more appropriate forum (Opinion at 10). However, incorporation and choice-of-law provisions alone do not establish purposeful availment for personal jurisdiction purposes. Rapport was never present in Wyoming during the relevant time period, and there is no evidence in the record that Chapiro was ever a resident of Wyoming or physically present there during the relevant time period. None of the conduct giving rise to this dispute occurred there. By contrast, the operative facts of the parties' business relationship and the alleged misconduct at issue were centered in Ohio. Treating Wyoming's corporate ties as dispositive, while discounting Ohio's substantive and dispute-generating contacts, physical presence notwithstanding, departs from the framework articulated in *Burger King Corp. v. Rudzewicz*, which instructs courts to evaluate the parties' actual course of dealing.

[11] These included: the Founder's Agreement; a formal loan agreement; the ARK Name Change and Incorporation document, which listed Plaintiffs' Cleveland address as the "principal place of business for hardware"; and numerous subsequent interstate financial transactions (Compl. Exh. D1) that directly underlie multiple claims in the suit, including breach of contract, conversion, civil theft, fraudulent conveyance, and RICO.

Therefore, Defendant knowingly entered into business contracts—which he is alleged to have breached—and an ongoing business relationship with an Ohio-resident officer, directed communications and obligations into Ohio, and his alleged misconduct arises directly from that relationship. Under *Cole*, these facts establish personal jurisdiction as a matter of law, and the Magistrate Judge's conclusion that Defendant lacked sufficient Ohio contacts cannot be reconciled with this binding Sixth Circuit precedent.

Binding Sixth Circuit precedent establishes that all three prongs of the *Sullivan* test are satisfied here, and resolves the personal jurisdiction question.[12] For completeness, Plaintiffs nevertheless address the remaining points raised in the Magistrate Judge's analysis individually.

**B. Purposeful Availment is Satisfied**

The Magistrate Judge reasons that "Plaintiffs' claims do not show that Chapiro intended to avail himself of the Ohio forum." But purposeful availment does not depend on any personal intent to invoke jurisdiction; rather, it depends on intentional conduct satisfying the minimum contacts rule. A defendant establishes minimum contacts when he deliberately enters into a continuing business relationship with a forum resident, even if all physical activity occurs elsewhere. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) ("Jurisdiction … may not be avoided merely because the defendant did not physically enter the forum."). *Cole v. Mileti*, *supra*.

With regard to whether Defendant entered into a continuing business relationship in Ohio, the evidence is overwhelming—Defendant deliberately and voluntarily entered into multiple business contracts with both Radian Industries, which is headquartered in Ohio, and with Nathan Rapport, who is a resident of Ohio. These contracts included, *inter alia*, a loan agreement (Compl. Exh. A1 p. 48) stating, "Michael Chapiro hereby agrees to loan Radian Industries Inc. $30,000 upon

---

[12] In the *Ford* case, the Supreme Court's distinguished *Walden*, relied upon by the Magistrate Judge (Opinion at 9), in a way particularly apropos to the case here, *to wit*, "But *Walden* has precious little to do with the cases before us. In *Walden*, only the plaintiffs had any contacts with the State of Nevada; the defendant-officer had never taken any act to "form[ ] a contact" of his own... The officer had "never traveled to, conducted activities within, contacted anyone in, or sent anything or anyone to Nevada." *Id.*, at 289. So to use the language of our doctrinal test: He had not "purposefully avail[ed himself] of the privilege of conducting activities" in the forum State…. Because that was true, the Court had no occasion to address the necessary connection between a defendant's in-state activity and the plaintiff's claims. " *Ford*, 592 U.S. at __, slip op. at 17, citations omitted.

13

execution of this agreement." This constitutes purposeful availment of the privilege of conducting business in Ohio and supports the exercise of specific personal jurisdiction under both Ohio law and due process principles. The foregoing loan agreement also satisfies the "contractual relationship" in the case the Magistrate Judge cites in his discussion of the due process requirement as well. (*Ford Motor Co.*, 592 U.S. at 359.)

**C. Arising out of or Relating to Activity in the State**

Plaintiffs' claims arise directly out of Defendant's conduct in his capacity as an officer of an Ohio-based company. The alleged misconduct—including breach of contract, interference with business relationships, defamation, and misuse of trade secrets—stems from Defendant's deliberate and voluntary engagement in Ohio-based commercial activity. Defendant deliberately engaged with an Ohio resident and an Ohio-based company to carry out business with foreseeable legal consequences in the state. Contrary to the Magistrate Judge's belief, the "arising out of or relating to" element of *Sullivan* is met in this case. *Cole v. Mileti*, supra; *Burger King*, supra.

**D. The Exercise of Jurisdiction over Chapiro is Reasonable in this Forum**

To arrive at his conclusion on reasonableness, the Magistrate Judge misapplies the standard, omits basic facts of the case, and fundamentally misrepresents the relationship between the parties; Rapport and Chapiro were not merely acquaintances—they were officers of Radian Industries (ECF No. 1 ¶¶ 80-82), which was headquartered in Ohio. The Magistrate Judge acknowledges that physical presence in the forum state is not required. It is equally well-established that due process does not require marketing to the forum state or contact with multiple residents, so these points are also legally irrelevant. No other Ohio residents are parties to this action, and Plaintiffs have not alleged specific legal injuries to anyone else.

In addition, the Magistrate Judge's claim that Plaintiff Rapport is Chapiro's only link with the Ohio forum is clearly refuted by the Loan Agreement between Chapiro and Radian Industries, as well as the fact that Defendant admitted to improperly disclosing Radian's trade secrets and improperly retaining Work Product (Compl. Exh. E2 p. 5, ECF 2-14, Page ID 443); these contacts

14

are central to the claims asserted and independently establish forum-related conduct beyond Plaintiff Rapport alone.

Given these facts, it is clear that Defendant purposefully availed himself of the privilege of conducting business in Ohio, that Plaintiff's claims arise directly from those forum-based contacts, and that the exercise of jurisdiction in Ohio is both reasonable and constitutionally appropriate. The Magistrate Judge's speculation that due process "may not be" satisfied (Opinion at 8) is contrary to law and unsupported in light of the numerous and deliberate nature of Defendant's forum contacts and forum related activities.[13] *Cole v. Mileti*, *supra*.

## VI. CONCLUSION

Plaintiffs respectfully requests that the District Court reject the Magistrate Judge's Report and Recommendation, find that service in this case was proper and that personal jurisdiction exists. Additionally, Plaintiffs request an entry of default against Defendant Chapiro and that the Court allow this case to go forward on a default hearing.

Date: January 23, 2026

Respectfully Submitted,

*/s/Michael W. Vary*

Michael W. Vary, Ohio Reg. 33,789
Counsel for Plaintiffs
17710 Westview Drive
Bainbridge, Ohio 44023
vary.michael@gmail.com
216-496-3429

---

[13] The treatment of personal jurisdiction in this matter stands in stark contrast with cases arising under the Telephone Consumer Protection Act and Junk Fax Protection Act, where courts have held that a single telephone call or fax purposefully directed to an Ohio resident or business may suffice to establish personal jurisdiction in Ohio. *See Progressive Health and Rehab Corp. v. Medcare Staffing, Inc.*, No. 2:2019cv04710 - Document 37 (S.D. Ohio, 2020). If such minimal communications are sufficient to establish personal jurisdiction, then surely a case as detailed above, that centers on alleged misconduct by the CEO of an Ohio-based company, causing harm to an Ohio resident, necessarily satisfies the jurisdictional standard as well.

15