**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Nathan Rapport, and | ) | Case No. 1:25-cv-02071-CEF |
| Radian Industries Inc., | ) | |
| | ) | Judge Charles E. Fleming |
| *Plaintiffs*, | ) | Magistrate Judge Reuben J. Sheperd |
| | ) | |
| v. | ) | |
| | ) | |
| Michael Chapiro, | ) | |
| | ) | |
| *Defendant.* | ) | |
| | ) | |

**PLAINTIFFS' OBJECTIONS TO ORDER DENYING**
**RENEWED MOTION FOR ALTERNATIVE SERVICE**

Plaintiffs Nathan Rapport and Radian Industries Inc., by and through their undersigned counsel, pursuant to Fed. R. Civ. P. 72(a) and 28 U.S.C. § 636(b)(1)(A), respectfully object to the Magistrate Judge's March 6, 2026 Order denying Plaintiffs' renewed motion for alternative service.

**I. Standard of Review**

Under Rule 72(a), the Court must modify or set aside any portion of a magistrate judge's order that is "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a). The Court's March 6 Order (ECF 24) meets that standard in at least three ways: (1) it misapplies Fed. R. Civ. P. Rule 4(f)(3) and improperly forecloses email service; (2) it misreads Ohio's publication statute and overlooks a provision that squarely applies to this case; and (3) it relies on a factual premise—Plaintiffs' purported "lack of candor"—as a basis for denying additional time for service, which factual premise is contradicted by the record. These errors warrant *de novo* review and form a basis for rejection of the Magistrate Judge's Order.

## II. Introduction

Plaintiffs' renewed motion for alternative service (ECF 24) principally sought authorization to serve Defendant by email under Rule 4(f)(3) Fed. R. Civ. P. and service by publication under Rule 4(e)(1) Fed. R. Civ. P. The Order does not dispute the main tenets underlying Plaintiffs' Rule 4 motion, namely, that Plaintiffs have made diligent efforts to serve the Defendant through traditional means and that Defendant's physical address is unknown, making traditional service impracticable. The Order also acknowledges that, by the Court's own orders, Plaintiffs are effectively foreclosed from using the only known street address for Defendant, "the Lenora Street address."

The March 6 Order is extraordinary and stands alone. Plaintiffs have not been able to locate any case in which a federal court has simultaneously denied service by email and publication once certified mail attempted service has been exhausted, despite actual notice to the defendant by a proven method of communication. This Court's Order, however, has erected a procedural blockade upon Plaintiffs, effectively denying them any hearing of this action on the merits.

Nevertheless, the Order holds that: (1) because Ohio law does not affirmatively provide for email service, this Court cannot authorize it, apparently relying solely upon Rule 4(e)(1); (2) that Rule 4(f)(3) permitting service by email does not apply to natural persons; (3) that Ohio law does not permit service by publication upon out-of-state defendants; and (4) further extensions of time are not warranted. Plaintiffs respectfully object to these propositions *seriatim*.

## III. The Order Erroneously Rejects Email Service

In the Court's Order, the Court focuses on the question of whether email service is a method authorized under Ohio law, an inquiry pertinent to an analysis under Rule 4(e)(1) Fed. R.

Civ. P., even though this issue was never raised in Plaintiffs' motion. Plaintiffs' sole support for seeking an Order authorizing email service is under Rule 4(f)(3) Fed. R. Civ. P. (ECF 23, pp.5-7). Plaintiffs recognize Ohio law does not expressly include email service as one of the enumerated methods of service permitted under Ohio Civ. R. 4.1. While that gap in state law limits the use of that mechanism for service under Rule 4(e)(1), that construction has no bearing whatsoever on Rule 4(f)(3), which independently authorizes court-ordered alternative service by "other means not prohibited by international agreement," a standard unconstrained by provisions of state law. The Order is simply misguided in its focus on state law on this issue.

Under Rule 4(f)(3), courts in this district have approved email service by email as an effective method where reasonable diligence to effect service by traditional means has failed and email is reasonably calculated to provide actual notice. In *Rauh v. Zheng*, No. 5:23-cv-2272, 2023 WL 8868491, at *3 (N.D. Ohio Dec. 19, 2023) (Lioi, J.), this Court authorized service by email on Fujing Zheng, a natural person located in China, holding that "[t]his method of service comports with due process." Moreover, in circumstances that parallel the circumstances of this case, Rule 4(f)(3) has been applied where an individual defendant's whereabouts are unknown, but the possibility of foreign residence exists. In *GeLab Cosmetics LLC v. DeRhodes*, Judge Benita Pearson of this Court encountered a similarly evasive defendant (the "true person" operating a website) whose location—domestic or international—was unknown. *GeLab Cosmetics LLC v. DeRhodes,* No. 4:25-cv-01234-BYP (N.D. Ohio Oct. 21, 2025) (Pearson, J.). By authorizing email service where the defendant concealed her address, Judge Pearson approved a method that satisfied due process regardless of that defendant's actual residence. Likewise, in *Noco Co. v. Zhejiang. Quingyou Elec. Com. Co*., 338 F.R.D. 100, 104 (N.D. Ohio 2021) (Barker, J.) this Court authorized email service for a known foreign defendant under Rule

4(f)(3). In particular, in *Noco*, this Court found that "electronic service is not prohibited by the Hague convention and is permitted when the defendant's business takes place online and the defendant has provided an incomplete or incorrect physical address." These factual predicates correspond precisely to the case at hand: Defendant Chapiro has a significant online presence, has a working and responsive email address, and has not provided any physical address; only a private mailbox.[1] *Rauh* and *GeLab* are cases under which the Court has authorized email service of process on individuals under Rule 4(f)(3) as an alternative to traditional methods of service that are "reasonably calculated" under *Mullane* to apprise defendant of the pendency of the action and afford them an opportunity to defend the case.

The Order relies on *Clark v. Parker* for the proposition that "the Federal Rules of Civil Procedure do not authorize service by publication or email." (ECF 24 p. 4.) But the cited sentence in *Clark* is asserted without any citation and appears only in the context of domestic service under Rule 4(e). *Clark* contains no discussion of Rule 4(f)(3), the provision Plaintiffs invoked in their renewed motion for alternative service (ECF 24). *Clark* is simply inapposite.

The Order also relies upon *McLemore v. Clinton County Sheriff's Office*, 214 N.E.3d 723, 738 (Ohio Ct. App. 2023), for the proposition that "Ohio does not permit service of process by email." But *McLemore* does not claim that Ohio law affirmatively prohibits email service; it merely observes that email is not one of the enumerated domestic service methods authorized under Ohio Civ. R. 4.1. *McLemore* does not hold that that email service is invalid where a federal court orders it under Rule 4(f)(3), nor can it. Ohio's domestic service rules cannot

---

[1] Similarly, in *Popular Enters., LLC v. Webcom Media Group, Inc.*, 225 F.R.D. 560 (E.D. Tenn. 2004), a district court within this Circuit authorized service by email under 4(f)(3) after service to the only known mailing addresses failed, and service by email was considered perfected on the grounds that an email was transmitted and there was no indication of a delivery failure.

override federal authority to authorize service "by other means not prohibited by international agreement," as Rule 4(f)(3) provides. The Order's reliance on *McLemore* as a categorical bar to Rule 4(f)(3) email service is therefore misplaced and clearly erroneous.

The Order further states that "the rules permitting service on a foreign corporation do not apply when considering whether service is properly made on a natural person," and uses this as a basis to reject email service. However, the Order provides no support for this proposition and offers no legal rationale explaining why the standard for court-ordered service under Rule 4(f)(3) would differ depending on whether the defendant is a corporation or an individual. Rule 4(f)(3) certainly draws no such distinction. To the contrary, Rule 4(f) governs service on "an individual—other than a minor, an incompetent person, or a person whose waiver has been filed …".  This controlling language makes it abundantly clear that Rule 4(f)(3) is applicable to individuals.

Likewise, the language of the Hague Convention, as referenced with respect to Rule 4(f)(3), expressly refers to service on persons rather than corporations. *Hague Convention on Service Abroad of Judicial and Extrajudicial Documents*, art. 1, Apr. 24, 1967, 20 U.S.T 361 ("This Convention shall not apply where the address of the *person* to be served with the document is not known.") (emphasis added). The proposition that email service is available for foreign corporations but prohibited for natural persons finds no support in the text of Rule 4, in the Hague Convention, or in any authority cited or discussed in the Order.

The Magistrate Judge attempts to distinguish *GeLab* and *Noco* on the grounds that those cases involve online businesses and not individuals. The Court does not explain why this distinction should matter with respect to service of process, so there is no reasoning for this distinction which Plaintiffs can address, but, as indicated above, this Federal Court has expressly

applied Rule 4(f)(3) to authorize service on natural persons. *See Rauh v. Zheng*, No. 5:23-cv-2272, 2023 WL 8868491, at \*3 (N.D. Ohio Dec. 19, 2023); *GeLab Cosmetics LLC v. DeRhodes,* No. 4:25-cv-01234-BYP (N.D. Ohio Oct. 21, 2025) (Pearson, J.). Moreover, other Federal courts have expressly applied Rule 4(f)(3) to natural persons. In *WhosHere, Inc. v. Orun*, 1:13-cv-00526 (E.D. Va. Feb. 20, 2014), the plaintiff sought leave to serve a single individual defendant, Gökhan Örün, allegedly residing in Turkey, by email and through his Facebook and LinkedIn accounts under Rule 4(f)(3). The court held that email and social media service on Mr. Orun comports with both Rule 4(f)(3) and traditional notions of due process. *Rauh*, *GeLab* and *WhosHere* are merely a few examples among many cases that contradict any notion that Rule 4(f)(3) is inapplicable to individuals.[2]

In sum, the Order's proposition under Rule 4(e)(1) that Ohio rules prohibit service by email is both incorrect and simply irrelevant to the basis for and proper analysis of the underlying motion. The Court's further conclusion that service by email under Rule 4(f)(3) does not apply to natural persons is clearly erroneous and a basis to reject the Magistrate Judge's conclusions.

### IV. The Order Erroneously Rejects Service by Publication

The Order rejects service by publication on the theory that Ohio law does not permit publication on a defendant avoiding service—which the Court now accepts is the circumstance here—focusing solely on Ohio Rev. Code § 2703.14(L) (residents leaving the county to avoid

---

[2] Furthermore, the Magistrate Judge in *WhosHere* expressly cited the Ninth Circuit's finding in *Rio Props. v. Rio Int'l Interlink,* 284 F.3d 1007, 1016-17 (9th Cir. 2002) that service pursuant to Rule 4(f)(3) is "neither a last resort nor extraordinary relief" and that "Rule 4(f) does not impose an exhaustion requirement," meaning that a plaintiff need not attempt service by other means before seeking court-ordered alternative service under Rule 4(f)(3). Nor do the Ohio Rules of Civil Procedure require exhaustion of other methods prior to effecting service under Rule 4(f)(3). In *WhosHere, Inc. v. Orun*, for example, the plaintiff received permission to effect service under Rule 4(f)(3) without first attempting service by mail.

creditors or service of a summons). However, that analysis overlooks § 2703.14(I), which directly fits this case: "(I) In an action that relates to ... personal property in this state, when the defendant has or claims ... an actual or contingent interest in the property or the relief demanded consists wholly or partly in excluding him from any interest in the property, and the defendant is not a resident of this state ... or his place of residence cannot be ascertained".[3]

The foregoing provision squarely covers Plaintiffs' cause of action here. This action relates to personal property in this state, including hardware and Confidential Materials (ECF 12-1, p. 2) such as physical hard drives and digital storage devices located in Ohio (without any copies on cloud servers). Defendant has claimed ownership over this property and demanded its "return",[4] and Plaintiff Rapport has sought a declaration of his inventorship and ownership over the property in question (ECF 1, p. 109), the return of all confidential and proprietary materials in Defendant's possession (ECF 1, p. 112), and constructive trust over any assets obtained by Defendant to the extent that such assets are traceable to misappropriations of Plaintiff Rapport's inventions (ECF 1, p. 114). Furthermore, Defendant is not alleged to be an Ohio resident, and his residence cannot be ascertained despite the aforenoted diligent efforts.

By treating § 2703.14(L) as the only relevant provision and reading Ohio law as categorically forbidding publication here, the Order misstates Ohio law and forecloses a statutory path the legislature expressly provided. That is clearly erroneous and contrary to law.

Ohio R. Civ. P. 4.4(A) expressly provides for service by publication where the defendant's whereabouts are unknown, as in this case ("upon a party whose residence is unknown"). As noted above, Ohio law permits service by publication in this case under

---

[3] The plain language of Section 2703.14 makes it clear that the subsections are cumulative and inclusive, not exclusive, *to wit*, "service may be made by publication in any of the following (enumerated) cases."

[4] For example, in Defendant's May 1, 2025 email he wrote, "All property of the company/myself must be returned including hardware, pending patents, and patentable information and technical information" (ECF 2-14 p. 4).

§2703.14(I). Furthermore, cases such as *Johnson v. Fuller* contradict the Order's categorical conclusion that "neither Ohio civil rules nor Ohio law permits service by publication on an out-of-state defendant in a civil action such as this." (ECF 24 p. 6.) *See Johnson v. Fuller*, 2:20-cv-0071 (S.D. Ohio, May 5, 2020) (authorizing publication under Ohio law on an individual whose residence is unknown).

Even if the Court were to reject the foregoing analysis under Rule 4(e)(1), this Court is requested to consider authorizing service by publication under Rule 4(f)(3) Fed. R. Civ. P. Courts in this district have authorized service by publication under Rule 4(f)(3) on out-of-state individuals in similar circumstances. In *Rauh v. Zheng*, this Court authorized service by publication on five Chinese natural persons through publication in the *International New York Times*, reasoning that the Hague Convention did not apply because the defendants' physical addresses are unknown despite plaintiffs' efforts to discover them, and holding that "[s]ervice of these defendants through publication is consistent with due process." In the case of *Rauh v. Zheng*, Rule 4(f)(3) provided a separate and independent route to authorize service by publication on out-of-state individuals ("by other means not prohibited by international agreement"). The Order categorically denied service by publication but does not provide any analysis under Rule 4(f)(3), which, as the foregoing demonstrates, supports service by publication in this case.

## V. The Basis for Denying Further Extensions is Factually Contradicted by the Record

In the event the Magistrate Judge's Order is set aside, and this Court allows service by email or publication, Plaintiffs request a short period of time to perfect service, sufficient in order to accomplish service by the manner so ordered.[5]

The Magistrate Judge's refusal to grant further extension of time rests solely on a conclusion of a "lack of candor" in Plaintiffs' pleadings. In a footnote, the Order states that Plaintiffs "now reveal" that on October 8, 2025, their process server reported that 300 Lenora Street is a private mailbox store and that service there was unlikely, implying that the Court was not apprised of this fact earlier.[6] The Order states that this "lack of candor has resulted in encumbering the court and wasting its resources," and on this basis, concludes that "[g]ood cause for continued extensions has dissipated."

However, Plaintiffs did not "reveal" these October 8 emails for the first time in their February 18, 2026 renewed motion for alternative service (ECF 23); these emails were included as the first exhibit in their original October 28, 2025 motion for alternative service (ECF 10-1), nearly four months earlier. Indeed, the body of the original motion itself repeatedly cites the evidence that the Lenora Street address is a private mailbox in support of Plaintiffs' request that the Court authorize alternative service. ("Plaintiff's process server determined that the address Defendant Chapiro listed in corporate filings … is a private mailbox facility.") ("As established, Defendant has concealed his physical address, listed only a private mailbox facility, and a professional skip trace has yielded no verifiable residential or business address.") (ECF 10, 11.)

---

[5] If the Court recognizes email as an appropriate method of service, and also recognizes prior email service obtaining actual notice as sufficient, *nunc pro tunc*, further extensions of time are unnecessary as Defendants are in default.

[6] This is apparently a reference to an exhibit attached to the renewed motion, an October 8, 2025 email from Plaintiffs' hired process server.

These facts demonstrate Plaintiffs were wholly candid and transparent regarding the nature of the Lenora address throughout these proceedings, and provided the email in its earliest filings in this case, contrary to the Order's opinion.[7] No reasonable reading of the record supports the conclusion that Plaintiffs concealed anything about this address; to the contrary, Plaintiffs highlighted these facts as the very basis for requesting alternative service on October 28, 2025. Plaintiffs have proceeded diligently in these proceedings.[8] Plaintiffs have maintained throughout this action that their damages, including damages caused by the theft and disclosure of their trade secrets, are irreparable, ongoing, accumulate daily, and present a risk of harm to the public (ECF 12, 22) ("Irreparable harm, including a danger to public safety and national security, is likely and imminent without Court intervention.") (ECF 12). Plaintiffs have timely filed all motions and objections, and have now twice moved this Court for alternative means of effecting service, which this Court has now twice denied. That the service process has dragged on due to any desire by Plaintiffs to manufacture delay is unsupported by the factual record. To the contrary, Plaintiffs favor a "just, speedy, and inexpensive determination" of this action as Rule 1 provides.

Meanwhile, Plaintiffs have maintained that service to the Lenora address was perfected on November 8, 2025, and since their successful mailing to that address timely filed an application to enter default (ECF 18) pursuant to Rule 55(a) against Defendant on December 3,

---

[7] Under Ohio law a valid basis exists for claiming that the Lenora address is in fact suitable for service. *See United Home Fed. v. Rhonehouse*, 76 Ohio App.3d 115, 601 N.E.2d 138 (Ohio App. 1991) in which the Court recognized that service using a post box address is a recognized method of service under Ohio law.  (ECF 17).

[8] The Court denied Plaintiffs' Motion for Alternate Service (ECF 10, 11) in a minute order on October 29 on the grounds that Plaintiffs had not mailed the Complaint and Summons to Defendant via the Court Clerk, and ordered Plaintiffs' attorney to mail the packet regardless of their previously-voiced concerns ("Plaintiff's attorney is ordered to comply with Local Rule 4.2 and prepare the packet for service by the Clerk, no later than November 12, 2025."). This directive to first attempt service by mail was also mentioned in the Magistrate Judge's November 6 Report and Recommendation (ECF 13) ("[O]n October 29, 2025, I denied Plaintiffs' motion for alterative service without prejudice, and instructed Plaintiffs' attorney to effect service according to Local Rule 4.2."). Plaintiffs' counsel promptly complied with the Court's order, and a packet was placed in the U.S. Mail by the Clerk on November 3rd.

only two days after the deadline to respond passed. Although the Court has postponed the Clerk's entry of default by over three months as of this filing, nothing in the text of Rule 55(a) suggests that the entry of default by the Clerk at that stage is non-mandatory or discretionary ("When a party against whom a judgment for affirmative relief is sought has failed to plead or otherwise defend, and that failure is shown by affidavit or otherwise, the clerk *must* enter the party's default.") (emphasis added). Fed. R. Civ. P. 55(a).

To fault Plaintiffs for a "lack of candor" that resulted in "encumbering the Court" and "wasting its resources" for carrying out the Court's own directive to attempt service by mail, despite already having moved for alternative service, is clearly erroneous. Because the denial of further extensions erroneously rests on a misreading of the record, that portion of the Order should be set aside.

### VI. Good Cause Exists to Extend Service

Rule 4(m) provides that when a plaintiff demonstrates good cause for failure to effect service within the allotted time, the court must grant an extension. Fed. R. Civ. P. 4(m). The Sixth Circuit defines "good cause" as a "reasonable, diligent effort to timely effect service." *Waseleski v. City of Brooklyn*, 2024 WL 1767279, at *3 (N.D. Ohio Apr. 24, 2024) (quoting *Thul v. Haaland*, 2023 WL 6470733, at *2 (6th Cir. Mar. 1, 2023)). Plaintiffs' efforts overwhelmingly satisfy this standard: Plaintiffs twice attempted service at the Lenora address, discovered and documented that the Lenora Street address was a private mailbox, successfully established contact with Defendant and his counsel by email, and twice moved for alternative service well before the deadline.

Plaintiffs exercised diligence in investigating the nature and suitability of the Lenora Street address long before the Court's February 9 Order (ECF 21). As reflected in both motions

for alternative service, Plaintiffs' process server confirmed on October 8, 2025 that the Lenora address is a private mailbox service rather than a residence or business location where Defendant maintains a physical presence. No associated residential or business address could be identified despite a professional skip trace. Plaintiffs promptly disclosed this information in their original motion for alternative service, attaching the process server's emails and expressly arguing that service by email should be authorized under Rule 4(f)(3).

Plaintiffs also exercised an unusually high level of diligence in their investigation of the Lenora address. Through these efforts, Plaintiffs determined that the Lenora address is the listed headquarters for Advanced Human Engineering LLC in the GLEIF database. Furthermore, Plaintiffs discovered that U.S. Department of Defense CAGE records, LinkedIn data, and the attribution line at the bottom of Chroma's public website all identify AHE/Chroma as an active entity currently operating from that address. Plaintiffs further confirmed that Defendant has used the Lenora mailbox for at least five years. Here, multiple independent sources (legal documents, federal and international entity records, website attribution, transactional history, and process server findings) all converge on Lenora as Defendant's chosen reliable mail address, underscoring both Plaintiffs' diligence in investigating it and its suitability as a service address.

Plaintiffs also exercised diligence to determine Defendant's whereabouts, discovering public records demonstrating Defendant traveling repeatedly through foreign jurisdictions, including Canada, Mexico, El Salvador, Argentina, and the United Kingdom. This evidence strongly supports the theory that Defendant lacks any fixed domestic residence and that Rule 4(f)(3) provides the appropriate alternative mechanism for service.

Additionally, Defendant received actual notice of the lawsuit no later than October 15, 2025, when he emailed Plaintiffs' counsel about the case and threatened a countersuit. Plaintiffs

emailed the Summons and Complaint to the same email address on October 20, 2025. The next day, attorney Zack Shapiro contacted Plaintiffs' counsel, acknowledged receipt of the Complaint, and discussed its contents—demonstrating that Defendant both received and forwarded the filings to counsel.

Finally, attorney Shapiro confirmed again on February 12, 2026, that he is Defendant's corporate counsel and had received and reviewed the Complaint at the time Plaintiffs first sent it, and he must have received it from Defendant. Defendant therefore had notice, his counsel had notice, and both refused to provide any physical address for service or execute a waiver; in particular, his counsel refused to facilitate service on the grounds that there is no rule requiring him to do so. (ECF 23 p. 4.) Under these circumstances, due process is satisfied, as Defendant had actual notice of the action and an opportunity to respond, and indeed, the Court has now effectively provided him an opportunity to respond for four months in excess of the standard Rule 12(a) deadline.

Plaintiffs' efforts easily meet the Sixth Circuit's "reasonable, diligent effort" standard. Plaintiffs have exhausted all traditional avenues, pursued extensive factual investigation, and ultimately confirmed Defendant's actual notice through both Defendant and his attorney.

Even if the Court's view that Plaintiffs were not fully candid regarding their knowledge of the Lenora address is accepted *arguendo*, the Court's apparent displeasure over the perceived "wasting" of judicial resources is immaterial with respect to the Rule 4(m) analysis. The Sixth Circuit's criteria for granting extension only examines the question of whether Plaintiffs have exercised reasonable diligence, and the Court's Order does not find that Plaintiffs failed to act diligently. Because Plaintiffs have made diligent efforts, an extension of the service deadline is mandatory under the plain language of the Rule. The Court's apparent frustration does not

override the mandatory extension required under Rule 4(m) once diligence is established. Rule 4(m) provides that "if the plaintiff shows good cause for the failure, the court *must* extend the time for service for an appropriate period." (emphasis added). The Court's denial of extension is therefore clearly erroneous and contrary to law.

## VII. An Extension is Required Regardless of Good Cause

Even if the Court were to conclude, *arguendo* and contrary to the record, that Plaintiffs have not established good cause under Rule 4(m), an extension would still be required under the Sixth Circuit's discretionary framework. When good cause is not found, the Court must consider seven factors including: "(1) whether the extension would be well beyond the timely service of process; (2) whether the extension would prejudice the defendant beyond having to defend the suit; (3) whether the defendant had actual notice of the suit; (4) whether the court's refusal would prejudice the plaintiff; (5) whether the plaintiff made any good faith efforts to effect service; (6) whether the plaintiff is a *pro se* litigant; and (7) whether any unique equitable factors exist." *United States v. Oakland Physicians Med. Ctr., LLC*, 44 F.4th at 569 (6th Cir. 2022). None of these seven factors were even considered in the Court's Order.

Every one of these factors weighs decisively in Plaintiffs' favor. (1) The modest extension sought (60 days) is not disproportionate; (2) no cognizable prejudice to Defendant would result; (3) Defendant indisputably had actual notice of the action months ago; (4) refusal to extend the deadline would severely prejudice Plaintiffs by foreclosing all available methods for them to effect service; (5) Plaintiffs have made exceptional good-faith efforts to effect service; (6) Plaintiffs proceed without the support of any law firm or institutional litigation structure, relying instead on a single privately retained attorney and personally financing all aspects of this litigation with limited resources, despite the exceptional financial burden and

material disruption to Plaintiff Rapport's personal and professional life; and (7) the equitable considerations—most notably Defendant's acknowledged evasion and his counsel's refusal to facilitate service despite actual notice—strongly favor allowing this action to move forward, and a premature dismissal would create one-sided harm. Under the seven-factor test, as under the good-cause standard, Rule 4(m) compels an extension.

Should the Court deny an extension under Rule 4(m) while simultaneously denying Plaintiffs all available methods to effect service—despite recognizing that actual notice has been made by established methods of communication with Defendant—a dismissal in these circumstances would be inherently prejudicial. Such a dismissal would impose a procedural impossibility to effectively terminate this action in a way that cannot be cured by refiling.[9]

### VIII. Conclusion

For the foregoing reasons, Plaintiffs respectfully request that the Court:

1. Set aside the March 6, 2026 Order denying Plaintiffs' renewed motion for alternative service;

2. Authorize service by email under Rule 4(f)(3) and either (a) deem Plaintiffs' prior email service effective *nunc pro tunc*, or (b) permit prompt re-service by email and extend the service deadline under Rule 4(m) to allow Defendant 21 days to respond;

3. Alternatively, hold that service by publication is available under Rule 4(e)(1), Ohio Civ. R. 4.4, and Ohio Rev. Code § 2703.14(I), or alternatively under Rule 4(f)(3), and grant Plaintiffs sufficient time (at least 60 days) to complete publication;

---

[9] Plaintiffs respectfully submit that this would meet the standard of a reversible error on appeal under the abuse-of-discretion standard.

4. Grant a mandatory extension under Rule 4(m) of at least 60 days on the grounds that good cause exists and that Plaintiffs have demonstrated reasonable diligence, or in the alternative, grant the extension under the Sixth Circuit's seven-factor test;

5. And grant such other and further relief as the Court deems just and proper.

Dated: March 17, 2026

Respectfully Submitted,

*/s/ Michael W. Vary*

Michael W. Vary, Ohio Reg. 33,789
Counsel for Plaintiffs
17710 Westview Drive
Bainbridge, Ohio 44023
vary.michael@gmail.com
216-496-3429

**Certificate of Service**

The undersigned hereby certifies that on March 17, 2026, I caused a true and correct copy of PLAINTIFFS' OBJECTIONS TO ORDER DENYING RENEWED MOTION FOR ALTERNATIVE SERVICE to be served on Defendant Michael Chapiro by electronic mail at michael@machcap.com.

Service is made by email for the purposes of providing notice of this filing and without prejudice to Plaintiffs, or to Plaintiffs' pending or future motions.

*/s/ Michael W. Vary*

Michael W. Vary