**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| Nathan Rapport, and | ) | Case No. 1:25-cv-02071-CEF |
| Radian Industries Inc., | ) | |
| | ) | Judge Charles E. Fleming |
| *Plaintiffs*, | ) | Magistrate Judge Reuben J. Sheperd |
| | ) | |
| v. | ) | |
| | ) | |
| Michael Chapiro, | ) | |
| *Defendant.* | ) | |
| | ) | |

**PLAINTIFFS' OBJECTIONS TO MAGISTRATE JUDGE'S ORDER OF MAY 1, 2026**

Plaintiffs Nathan Rapport and Radian Industries Inc., by and through their undersigned counsel, pursuant to Fed. R. Civ. P. 72(a) and 28 U.S.C. § 636(b)(1)(A), respectfully object to the Magistrate Judge's May 1, 2026 Order (ECF No. 29) to the extent that it limits their action to *in rem* claims concerning personal property.

**I. INTRODUCTION**

On January 9, 2026, Magistrate Judge Sheperd issued a Report and Recommendation holding that service to 300 Lenora Street—the only known mailing address for Defendant Chapiro, to which mail in this action has been successfully delivered twice—could not be cured. Plaintiffs timely objected, but the Court overruled those objections and adopted the Report and Recommendation on February 9. (ECF Nos. 19–21.)

Plaintiffs then filed a Renewed Motion for Alternative Service, seeking email service under Fed. R. Civ. P. 4(f)(3), or alternatively, service by publication under Fed. R. Civ. P. 4(e)(1) and Ohio Civ. R. 4.4(A)(1). (ECF No. 23.) On March 6, the Magistrate Judge denied the motion, holding that email service was unavailable because Ohio does not permit service by email and that publication was unavailable under O.R.C. § 2703.14. (ECF No. 24.)

1

Plaintiffs timely objected. (ECF No. 25.) On March 30, Judge Fleming remanded the motion for the Magistrate Judge to determine whether O.R.C. § 2703.14(I) applies, whether Plaintiffs exercised reasonable diligence, and whether Plaintiffs are entitled to effectuate service by publication. (ECF No. 26, pp. 5–6.)

On May 1, Magistrate Judge Sheperd answered all three questions in the affirmative, finding that § 2703.14(I) applies, that Plaintiffs exercised reasonable diligence, and that service by publication is authorized. (ECF No. 29.) However, the Order went further and limited the proceeding to an *in rem* action concerning tangible hardware located at Plaintiffs' Cleveland address. In doing so, the Order concluded that Plaintiffs' intellectual-property claims and claims concerning control of Radian Industries fall outside § 2703.14(I), relying principally on *Brownewell*.[1]

Plaintiffs do not object to the Order insofar as it authorizes service by publication. Plaintiffs have already commenced publication through the Daily Legal News, with the first installment published on May 13. (Exh. A.) Plaintiffs object only to the Order's limitation of the claims that may proceed. As set forth more fully below, that *in rem* limitation is contrary to controlling law, improperly limits the scope of "property" within the meaning of O.R.C. § 2703.14(I), and is clearly erroneous and contrary to law.

## II. ARGUMENT

### A. The Court Misreads the Impact of *Shaffer v. Heitner*

The Court states in its analysis that the subsection (I) of the Ohio service by publication statute "does not provide for *in personam* actions…[but] provides for only limited jurisdiction, as against any property within Ohio's jurisdiction." (Op. at 11). In its attempt to limit this action to *in rem* claims only, the Court relies on pre-1977 decisions such as *Brownewell*. However, *Shaffer v.*

---

[1]  Respectfully, with respect to Radian the Order appears to mischaracterize the nature of Plaintiffs' claims. Radian is not disputed property in this action; it is a named plaintiff. Nor has any party appeared to contest Plaintiff Rapport's ownership of, or authority to act for, Radian. The Complaint therefore does not present a claim concerning 'control of Radian Industries' in the sense addressed by the Order.

*Heitner* displaced the *Pennoyer* doctrine and erased the service-based distinction between *in rem* and *in personam* claims**.** *Shaffer* expressly found that *in rem* proceedings should be governed by the same due process standard as *in personam* cases under *International Shoe*. *Shaffer*, 435 U.S. at 212.

In *Shaffer*, the Supreme Court did not limit a court's jurisdiction to *in rem* jurisdiction in all cases involving service by publication; rather, it held that, "[i]f it exists, that jurisdiction must have some other foundation." Specifically, by holding that "all assertions of state-court jurisdiction must be evaluated according to the standards set forth in *International Shoe* and its progeny," the Supreme Court effectively erased any service-based distinction between *in rem* and *in personam* litigation. *Id.* The Supreme Court expressly held that "the standard of fairness and substantial justice set forth in *International Shoe* should be held to govern actions *in rem* as well as *in personam*." *Id.*

No post-*Shaffer* cases can be found that support the Magistrate Judge's analysis, and the Magistrate Judge cites to none.[2] The Magistrate Judge's analysis to the contrary at page 11 of his opinion was clear legal error. Service therefore, in this case under the state statute is service of the entire case and all of its claims on Defendant Chapiro.

**B. O.R.C. § 2703.14(I) Authorizes Service and Does Not Limit the Complaint**

The Order invents a procedural construct that neither federal nor Ohio law recognizes: a partial summons. Rule 4 does not authorize service of selected counts; rather, Fed. R. Civ. P. 4(a)(1)(E) requires the summons to warn of default judgment for "the relief demanded in the complaint," and Rule 4(c)(1) requires that the summons be served "with a copy of the complaint." Ohio Civ. R. 4.4 likewise requires "[a] copy of the complaint" to be attached to each summons. *Mullane* sets the constitutional floor as notice of "the pendency of the action," not notice of isolated claims. 339 U.S. 306, 314 (1950). Neither the Federal Rules, Ohio procedure, nor due process contemplates a summons effective only as to selected claims.

---

[2] While the 6th circuit case, *Duncan v. Peck*, cited by the Magistrate Judge at page 11 of the Opinion, expresses an interpretation of *Shaffer* that requires more than property ownership in the state to meet the minimum contacts rule and to confer personal jurisdiction upon a Defendant, as discussed in Section C*, infra*, Plaintiffs maintain they satisfy that requirement.

*Mullane*, which utilized service by publication, involved a proceeding with *in personam* consequences that adjudicated personal rights of nonresident beneficiaries of the trust at issue, for example, by immunizing the trustee against subsequent suits for negligence or breach of trust. The Supreme Court nevertheless rejected the premise that the constitutional adequacy of notice turns on whether the proceeding is labeled *in rem*, *quasi in rem*, or *in personam*. *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306 (1950) ("But, in any event, we think that the requirements of the Fourteenth Amendment to the Federal Constitution do not depend upon a classification for which the standards are so elusive and confused generally, and which, being primarily for state courts to define, may and do vary from state to state."). The Order therefore errs by treating publication under § 2703.14(I) as categorically limited by *in rem* or *quasi in rem* classifications—precisely the kind of formal classification rule rejected in *Mullane*.

The plain text of Ohio Rev. Code § 2703.14(I) establishes a threshold for when publication service is available "[i]n an action"—not on a claim-by-claim basis. That threshold is determined by whether the action relates to Ohio personal property, whether the defendant claims an interest in that property, and whether the defendant is a non-resident or his residence cannot be ascertained. If all three are satisfied, "Service may be made by publication." Nothing in the statute limits the claims that may proceed once the threshold is satisfied or restricts jurisdiction to only *in rem* proceedings. The Magistrate Judge's May 1 Order reads limitations into § 2703.14(I) that do not appear in its text, treating a threshold for the procedural service authorization as a substantive restriction on which claims may proceed. That reading has no support in the statute's language, structure, or purpose.

The Order relies on *Brownewell* for the proposition that "[f]or purposes of § 2703.14(I), publication is available where the 'controversy relates to property which is within the jurisdiction of the court.' *Brownewell v. Columbus Clay Mfg. Co.*, 131 N.E.2d 696, 699 (Ohio Com. Pl. 1955), *aff'd*, 166 Ohio St. 324, 142 N.E.2d 511 (1957)." The Magistrate Judge has expressly found that this action relates to personal property within the jurisdiction of the Court, so the threshold in

4

*Brownewell* is met. *Brownewell* does not support the Court's conclusion that § 2703.14(I) authorizes a federal court to exclude well-pleaded and independently-supported *in personam* claims from adjudication in a case that also includes *in rem* claims, particularly after *Shaffer v. Heitner* was decided (*supra*).

Even supposing *arguendo* that Radian lacks Ohio contacts, that is still irrelevant to the § 2703.14(I) inquiry. In *Keeton*, the U.S. Supreme Court held that a plaintiff need not have minimum contacts with the forum state; due process requires contacts only by the defendant. *Keeton v. Hustler Magazine, Inc.*, 465 U.S. 770, 779–80 (1984) ("a plaintiff is not required to have 'minimum contacts' with the forum State before that State is permitted to assert personal jurisdiction over a nonresident defendant"). O.R.C. § 2703.14(I) imposes a property nexus requirement, but not a plaintiff-contact requirement. The Order's reliance on Radian's Wyoming incorporation to narrow the claims available for adjudication is therefore erroneous and contrary to law.

Once the statutory threshold is met, § 2703.14(I) authorizes publication service for the action, and all claims in the action may proceed subject to ordinary jurisdictional, venue, and merits considerations. It does not authorize the Court, in this procedural setting, to divide the Complaint into categories of claims that may or may not proceed. The Court's decision to the contrary was clearly erroneous and contrary to law.

**C. Personal Jurisdiction Is Independently Supported**

The Order's *in rem* limitation is grounded on a conclusion that the Court lacks personal jurisdiction over the Defendant Chapiro. While Plaintiffs have previously addressed the independent grounds for *in personam* jurisdiction (ECF No. 20, pp. 10-15; Exh. B), this Court did not address the issue in its Order that resolved the motion. (ECF 21, p.11). Because the question of personal jurisdiction is so central to the Magistrate Judge's May 1 Order, that issue is now squarely before the Court, particularly given the court's reference to *Shaffer v. Heitner*. For brevity, Plaintiffs incorporate their position in support of personal jurisdiction over Mr. Chapiro from ECF 20, Exh. B hereto, as if fully rewritten herein.

Publication under O.R.C. § 2703.14(I) is a method of notice and does not erase other jurisdictional contacts or convert the entire case into an exclusively *in rem* proceeding where, as demonstrated by Plaintiffs' position, specific personal jurisdiction otherwise exists. Thus, even assuming *arguendo* that publication alone only supports limited property-based relief, that limitation vanishes if and when the Court resolves that it has independent personal jurisdiction over Chapiro as Plaintiffs maintain.[3]

**D. Final Ownership of the IP Is Immaterial to the § 2703.14(I) Service Threshold**

Even if this court were to decide the Magistrate Judge's Order limiting the case to *in rem* claims is correct, Plaintiffs maintain the defined scope of the pertinent "property" is nevertheless broader than the Magistrate Judge defined. O.R.C. § 2703.14(I) applies to "real or personal property in this state." The statute does not limit "personal property" to tangible property or exclude intangible personal-property interests. Accordingly, the mere fact that some disputed rights are intellectual-property rights does not place them outside § 2703.14(I). The Magistrate Judge's Order which limits "property" to "hardware located in the State of Ohio" was erroneous and contrary to law.

The Order's exclusion of IP-related claims from publication service rests on a fundamentally erroneous treatment of the corporate domicile of the alleged IP owner as determinative of the IP's property nexus. O.R.C. § 2703.14(I) depends only on whether the action relates to personal property "in this state," not on where an alleged owner is incorporated or domiciled. Here, the disputed source code, technical specifications, confidential materials, R&D records, and prototype configurations are embodied in and stored on physical media and hardware located at Radian's principal place of business in Ohio. That Ohio property nexus satisfies the statutory threshold. Moreover, it would defeat the very purpose of the statute to require an ownership determination

---

[3] Moreover, Plaintiffs assert that Rule 4(k)(1) and (2), Fed. R. Civ. P. apply. Under the framework established in *ISI International, Inc. v. Borden Ladner Gervais LLP*, 256 F.3d 548, 552 (7th Cir. 2001), the burden lies on the defendant to name a state where he is subject to general jurisdiction. The Court's own findings establish that he has no ascertainable residence, and the defendant has identified no such state. Once publication service is complete, Rule 4(k)(1) and (2) supplies personal jurisdiction in this action independently of § 2703.14(I).

before service may issue, when the statute itself recognizes that ownership and exclusion from claimed interests are among the very issues to be adjudicated.

Under the copyright fixation doctrine, a work is protected where it is fixed in a tangible medium of expression. 17 U.S.C. §§ 101, 102. When source code, CAD files, technical specifications, and related copyrightable works are stored on physical hardware—for example, hard drives or Arduino boards—they are fixed in that hardware, and the situs of those fixed works is the physical location of the hardware. This is consistent with the foundational conflict of laws principle that situs of tangible personal property is determined by physical location. Restatement (Second) of Conflict of Laws § 244. The Founders Agreement has no bearing on where the work is physically situated. Plaintiffs' copyrightable IP is therefore personal property located in the State of Ohio for the purpose of § 2703.14(I).

The same principle extends to trade secrets under federal law. The DTSA defines trade secrets to include information "whether tangible or intangible, and whether or how stored, compiled, or memorialized physically, electronically, graphically, photographically, or in writing." 18 U.S.C. § 1839(3). Congress's explicit recognition that trade secrets may be stored physically means that when trade secret information is stored on physical media, that media and its location have legal significance. Plaintiffs' trade secrets, stored on hardware in Ohio are therefore Ohio personal property for the purpose of § 2703.14(I). Rapport's physical prototype of the Artifact technology, comprised of hardware, is a physical implementation of intellectual property at issue in this action, containing trade secrets.

The relevant property nexus is therefore Ohio: the code, confidential materials, trade secrets, and prototype models are stored on, fixed in, and implemented through hardware located in Cleveland, which the parties themselves designated as Radian's "principal place of business for hardware." (ECF No. 2-1, p. 12). The Order's conclusion that the IP embodied in and implemented through that hardware is situated somewhere other than Cleveland, Ohio is clearly erroneous and the unnecessarily restrictive reading of "property" under the Ohio statute is contrary to law.

**E. The Order Improperly Resolves IP Ownership at the Service Stage**

The Order improperly resolves disputed intellectual-property ownership issues at the service stage. Plaintiffs allege that "Plaintiff Rapport is the sole inventor of the technologies underlying Radian's core business and retains full intellectual property ownership rights before, during, and after the Company's dissolution" (ECF No. 1, ¶ 4) while Defendant contributed nothing to inventorship and obtained access only through alleged misrepresentation and fraudulent inducement. Plaintiffs further allege, with supporting exhibits, that all IP at issue in this action was invented solely by Rapport before Radian's formation. Contemporaneous statements further show that Rapport intended only to license his IP to Radian after patenting it in his own name, following the same commercialization model as the Vacuustat license. (ECF No. 1, ¶¶ 28–39; ECF No. 2-5, pp. 4–9). Under *Twombly* and *Iqbal*, those well-pleaded factual allegations must be accepted as true at the pre-merits stage, and disputed factual inferences may not be drawn against Plaintiffs. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555-56 (2007); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Yet the Order erroneously concluded that Radian controlled the intellectual property and that Radian's IP was "ostensibly assigned" to Celestial Precision. Plaintiffs maintain those merits issues were not properly before the Court and should not be resolved in a procedural decision.

The Order also misreads the Letter of Intent ("LOI") materials. Plaintiffs did not submit those documents as operative agreements or completed assignments: they were pleaded under "Breaches of Fiduciary Duty and Justification for Dissolution" as evidence of Defendant's attempted self-dealing and fiduciary misconduct. The Complaint alleges that the proposed restructuring "was never agreed to or adopted by the parties," and that Defendant's proposed LOI violated standing board resolutions and Radian's conflict-of-interest policy (ECF No. 1, ¶¶ 115-116). The documents themselves are facially non-binding: one is titled "Non-Binding Letter of Intent," and the other is titled "Non-Binding Radian Restructuring LOI/MOU" (ECF No. 2-1 pp. 178-181). The Order's reliance on the LOI materials is further undermined by the fact that the contemplated restructuring was never consummated: neither the Seldon Initiative nor Celestial

Precision was ever incorporated, and the proposed share transfers never occurred. Because Celestial Precision was never formed, it could not receive or own property, and the Order's theory that any IP was transferred to this entity is impossible on its own terms. The Court misleadingly presents Plaintiffs' evidence of alleged misconduct as evidence that the misconduct succeeded.

The Order therefore rests on an assignment theory which is not only unsupported by the documents and contradicted by Plaintiffs' pleadings, but also at odds with Defendant's contemporaneous statements. Defendant Chapiro never asserted any Celestial Precision assignment or transfer. Rather, his personal legal theory, which he claims grants him ownership of Plaintiff Rapport's IP, is that the dissolution of Radian was "unlawful," that Plaintiff Rapport's dissolution constituted a "de facto resignation," that Rapport's shares were somehow repurchased or reduced, and that Radian owns the IP and physical, tangible property. (ECF No. 2-14, pp. 2-4.) The Order's reliance on a transfer of IP from Radian to Celestial Precision to narrow the claims available for adjudication is therefore clearly erroneous and contrary to law.

**F. The Ownership Question Creates a False Dilemma Because Both Alleged Rights-Holders Are Plaintiffs**

The May 1 Order's focus on whether Rapport or Radian owns or controls the IP also creates a false dilemma, because both alleged rights-holders are plaintiffs and both are located in the State of Ohio. Whether the IP is owned by Rapport or Radian, this action still relates to a Plaintiffs' personal property because Radian is also a plaintiff asserting claims through its authorized representative, Plaintiff Rapport. Thus, even accepting *arguendo* the possibility that Radian—which is now dissolved—continues to hold some IP rights, that is insufficient to justify excluding IP-related claims from the case.

Intellectual property is personal property, and the Order errs by treating the IP dispute as categorically outside O.R.C. § 2703.14(I). The Order's reference to the *MCP IP* decision (Order, p.9) does not support such a categorical restriction.  Whether the relevant IP rights belong to Rapport individually or to Radian, the alleged rights-holder is a plaintiff in this action, and the

property nexus is Ohio: Rapport resides in Ohio, Radian's principal place of business, operations and development activities were located in Ohio, and the technical materials, confidential information, code, CAD files, physical storage media, and related R&D records at issue are maintained in Ohio.

That Radian was incorporated in Wyoming does not change this analysis. The situs of the property, the location of the relevant conduct, and the forum contacts all support jurisdiction in Ohio. The Complaint alleges that Radian's principal place of business and development activities were in Cleveland, Ohio, that Defendant designated Plaintiff Rapport's Cleveland address as Radian's business location in the federal System for Award Management and in the ARK Interim Partnership Agreement (ECF No. 1, ¶ 10), and that the relevant hardware, research, and development was located in Ohio. The nexus of operations, property, and injury was in Ohio, and no participant in this dispute is alleged to have physically presented in Wyoming at any point. Under *Burger King Corp. v. Rudzewicz*, jurisdictional analysis looks to the parties' "actual course of dealing." 471 U.S. 462, 479 (1985). Ohio is where the actual course of dealing, operations, and development occurred, and is where every relevant piece of property is located. The Order's reliance on Radian's Wyoming incorporation to cancel Ohio's property nexus is contrary to law and should be set aside.

## G. The Order Ignores Plaintiffs' Well-Pleaded Allegations that Rapport Retains Beneficial Ownership of the IP

Even if the Court were permitted to consider or resolve questions of IP ownership at this procedural step, the Complaint pleads multiple independent grounds showing that Plaintiff Rapport retains direct or beneficial ownership of the disputed IP.

The Order's reliance on the Founders Agreement as the basis for any IP assignment is undermined by Plaintiffs' express fraudulent inducement claim, Count XVI (ECF No. 1, ¶¶ 319-327). The Complaint alleges that Defendant secretly incorporated Radian without Rapport's knowledge, concealed his publicly and repeatedly stated ideological opposition to intellectual

property rights during the formation period, and thereby fraudulently induced Rapport to cofound Radian, grant Defendant equity, and provide access to his proprietary technology. Plaintiffs' well-pled fraudulent inducement claim therefore undermines the Court's conclusion that Radian, or any other entity other than Plaintiff Rapport, owns the IP that forms the core of this case.

Plaintiffs also expressly sought rescission of all agreements or portions thereof granting Defendant equity, ownership rights, or IP interests in the Inventions at issue (ECF No. 1, ¶ 329). An assignment procured by fraudulent inducement is voidable at the election of the defrauded party, and Plaintiffs have elected to void specifically those provisions purporting to grant or transfer IP rights. The Order's treatment of the Founders Agreement's IP assignment provisions as valid and operative therefore rests on provisions Plaintiffs have expressly pleaded to rescind. Count XVI is a well-pleaded allegation the Order is required to accept under *Twombly*, 550 U.S. 544 (2007), and *Iqbal*, 556 U.S. 662 (2009), and which it improperly ignored.[4]

Even accepting the Founders Agreement as remaining operative *arguendo*, that assignment did not transfer the IP away from Rapport beneficially. Rapport was Radian's majority shareholder, board controller, and—following Defendant's termination for misconduct—its sole remaining officer and employee. The assignment therefore ran to an entity wholly controlled by Rapport. Upon Radian's dissolution, its assets vest in the winding-up estate under Rapport's sole authority as remaining officer. Under any legally cognizable theory of beneficial ownership, the IP remains Rapport's. Therefore, the Court committed clear error in attributing IP ownership to any party other than Plaintiff Rapport, particularly where the Complaint pleads multiple independent grounds supporting Rapport's direct or beneficial ownership of the IP.

---

[4] Beyond the fraudulent inducement claim, the Complaint contains two independent allegations establishing that Rapport retains direct ownership of the core IP entirely apart from any assignment analysis. First, with respect to the Vacuustat: the Complaint alleges that the commercialization requirement under the licensing agreement was never met, rendering that agreement null and void and vesting all commercialization rights directly in Rapport (ECF No. 1 ¶ 74). Second, with respect to the Artifact navigational technology: the Complaint alleges that no licensing agreement was ever established; Rapport invented the technology before Radian was incorporated (ECF No. 1, ¶¶ 28-39), Rapport filed the provisional patent solely in his own name, and he has never assigned it to any entity or person (ECF No. 1, ¶ 75). These are well-pleaded allegations the Court is required to accept as true under *Twombly* and *Iqbal* and which it ignored.

**H. The Order Improperly Disposes of Virtually All 23 Counts Through a Procedural Ruling**

The Order's limitation effectively operates as a *sua sponte* dismissal of virtually all 23 counts in Plaintiffs' Complaint. Of Plaintiffs' 23 counts, Count XXIII is the only count even partly susceptible to characterization as *in rem* or *quasi in rem*, because it seeks declarations excluding Defendant from claimed interests in Plaintiffs' intellectual property, confidential materials, and related rights. But even Count XXIII is not principally focused on hardware; rather, it seeks declarations regarding the parties' legal rights and obligations. Thus, under the Order's hardware-only limitation, no pleaded count remains clearly available for adjudication.

The Order's framework therefore renders the service authorization illusory and produces the same practical result as a dismissal without prejudice, but without any motion, any adversarial briefing, any hearing, or any of the procedural protections to which Plaintiffs are entitled before their claims may be extinguished. That result is procedurally improper on multiple independent grounds.

First, the Order exceeds the scope of Judge Fleming's March 30 remand, which was to answer three limited, non-dispositive service questions to determine whether service by publication is warranted. The remand did not authorize a premature merits inquiry into IP ownership, the continuing effect of the Founders Agreement, Wyoming dissolution law, or whether particular claims should be excluded from adjudication. However, the Order exceeded the remand by excluding categories of Plaintiffs' claims from adjudication, which is a dispositive claim-limitation ruling and barred without the parties' consent under 28 U.S.C. § 636(b)(1)(A) and Rule 72.

Second, the Order bypasses the ordinary mechanisms for dismissal or claim adjudication under Rules 12 and 56. Third, it resolves disputed factual and merits issues against Plaintiffs in violation of the *Twombly* and *Iqbal* requirement that well-pleaded allegations must be accepted as true at the pre-merits stage. Fourth, because the Order is functionally dispositive, it deprives Plaintiffs of the procedural protections required before claims may be extinguished, including

12

notice, briefing, an opportunity to be heard, and district-judge review under Rule 72(b) and 28 U.S.C. § 636(b)(1).

Under *Mathews v. Eldridge*, 424 U.S. 319 (1976), due process requires the court to weigh the private interest affected, the risk of erroneous deprivation through the procedures used, and the government's interest in limiting those procedures. All three factors weigh decisively against the Order's limitation here. Plaintiffs' private interest is substantial—over $200 million in pleaded damages arise from *in personam* claims including misappropriation, fraud, defamation, and RICO violations. The risk of erroneous deprivation is total—the Order may eliminate all 23 counts without any adversarial process. And there is no legitimate government interest served by resolving merits questions *sua sponte* in a procedural service order before the defendant has appeared. The Order extinguishes Plaintiffs' rights to having their claims heard without the procedural protections due process requires.

The Order also violates the doctrine established in *Steel Co. v. Citizens for a Better Environment*, 523 U.S. 83 (1998), which proscribes federal courts from resolving merits questions in the guise of jurisdictional rulings. The Supreme Court in *Steel Co.* condemned the practice of "drive-by" jurisdiction, also referred to as the "doctrine of hypothetical jurisdiction"—deciding claims on merits while characterizing the ruling as jurisdictional. That is precisely what the Order does here: it conducts a *sua sponte* merits analysis of IP ownership, contract validity, and corporate authority, characterizes the result as a jurisdictional limitation under O.R.C. § 2703.14(I), and uses its jurisdictional conclusions to eliminate claims. IP ownership is a central merits question of this case, and adjudicating it under the guise of a jurisdictional service ruling is contrary to *Steel Co*.

Moreover, regardless of whether Count XXIII remains for adjudication, the hardware identified by the Order remains in Plaintiffs' possession, and Plaintiffs do not claim any damages to that hardware. Plaintiffs' pleaded damages arise, *inter alia*, from misappropriation of intellectual property and trade secrets, delay and obstruction of commercialization, diversion of investment opportunities, destruction of enterprise value, fiduciary misconduct, defamation, fraud, tortious

interference, statutory violations, and related economic injuries. Accordingly, the Order's hardware-only limitation eliminates Plaintiffs' claims involving monetary damages exceeding $200 million from any action proceeding by publication service, entirely depriving Plaintiffs of the adjudication of their pleaded damages. If service by publication were construed to only permit relief that cannot meaningfully redress the asserted claims, that may raise access-to-courts concerns.

**I. Any Publication Must Be Protective and Without Waiver**

Plaintiffs are proceeding with service by publication as authorized by the Order solely as a protective measure to preserve their rights within the Court's June 26, 2026 deadline. By proceeding with publication, Plaintiffs maintain, as demonstrated above, such service is effective service on Mr. Chapiro for all purposes, both *in rem* and *in personam*. Plaintiffs' decision to proceed with publication does not constitute, and shall not be construed as, an election of a hardware-only proceeding, an acceptance of the Order's claim limitations, or a waiver of any argument, right, or remedy available to them.

### III. CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court sustain their objections and set aside the Order's *in rem* restriction. The plain text of O.R.C. § 2703.14(I) authorizes publication service for this action in its entirety, particularly after *Shaffer v. Heitner* and given the existence of substantial contacts that confer personal jurisdiction over Defendant Chapiro. The Order's claim-filtering limitation finds no support in the statute's text, exceeds the scope of the remand, rests on unauthorized merits determinations in violation of *Twombly* and *Iqbal*, and is clearly erroneous and contrary to law.

In the alternative, if the Court concludes that some limitation remains appropriate, Plaintiffs request that the Court permit them to proceed with all claims relating to the property at issue in this action, whether *in personam* or *in rem*, including intellectual property, confidential materials, source code, technical records, prototype models, and tangible hardware.

In a further alternative, Plaintiffs respectfully request that the Court reconsider its denial of email service under Rule 4(f)(3) in light of the supplemental evidence of Defendant's international travel and unknown residence now in the record (ECF Nos. 27, 28), authorize email service as an independent basis for effecting service on Defendant, deem Plaintiffs' prior email transmission of the summons and complaint effective *nunc pro tunc*, or, alternatively, permit Plaintiffs to re-serve Defendant by email and extend the service deadline accordingly. This reconsideration by the Court is particularly *apropos* in view of the Magistrate Judge's reliance on *MCP IP* (Order p. 9), a federal case interpreting Ohio law, which denied service by publication in a patent and trademark infringement case on a defendant whose address was unknown, but allowed service by process by email under Rule 4(f)(3), Fed. R. Civ. P.

Dated: May 15, 2026

Respectfully Submitted,

*/s/ Michael W. Vary*
Michael W. Vary, Ohio Reg. 33,789
Counsel for Plaintiffs
17710 Westview Drive
Bainbridge, Ohio 44023
vary.michael@gmail.com
216-496-3429

**Certificate of Service**

The undersigned hereby certifies that on May 15, 2026, I caused a true and correct copy of PLAINTIFFS' OBJECTIONS TO MAGISTRATE JUDGE'S ORDER OF MAY 1, 2026 to be served on Defendant Michael Chapiro by electronic mail at michael@machcap.com.

Service is made by email for the purposes of providing notice of this filing and without prejudice to Plaintiffs, or to Plaintiffs' pending or future motions.

/s/ *Michael W. Vary*

Michael W. Vary