# Exhibit B: ECF No. 20 pp. 10-15

the effect that the defendant never received a copy of the Complaint, the totality of which the court found was sufficient to rebut the presumption of proper service. Unlike *Hall*, here, there is no direct evidence to rebut the presumption of proper service that follows from plaintiffs having followed the Federal Rules of Civil Procedure and the Ohio Civil Rules. Having followed the rules, Plaintiffs are entitled to a presumption of proper service. Nothing in the Magistrate Judge's report or recommendation is to the contrary on this point.

Indeed, all indications reflect that Defendant Chapiro *in fact* received service. The Magistrate Judge does not anywhere address this fact nor distinguish the *Rhonehouse* case relied upon by Plaintiffs in their Notice of Perfected Service (ECF No. 17). In *Rhonehouse*, actual mail delivery was made upon defendant William Rhonehouse, and the lower court concluded that actual service was made upon him. On appeal, Defendant submitted an affidavit in attempt to rebut the presumption of actual service but the lower court had found that affidavit not credible in view of the fact that his spouse had received actual service of process at the same address. The Court of Appeals in *Rhonehouse* agreed, stating "service need not be made to the parties' actual address so long as it is made to an address where there is a reasonable expectation that service will be delivered to the party," and concluded that "service to a post office box is sufficient if it meets this test." The Magistrate Judge nowhere addresses nor distinguishes *Rhonehouse*, and his conclusion to the contrary is clearly erroneous and a basis for rejection under 28 USC § 636(b)(1), Rule 72(b), Fed. R. Civ. P., and Local Rule 72.3(b).

## IV. THE COURT HAS PERSONAL JURISDICTION OVER DEFENDANT

### A. Legal Standard for Personal Jurisdiction

In his Opinion, the Magistrate Judge explains, "Determining whether a state court has personal jurisdiction over a nonresident defendant is a two-step process: first, the cause of action must arise from the type of conduct listed in Ohio's longarm statute; next, if the longarm statute is satisfied, the court must determine whether its exercise of personal jurisdiction over the nonresident defendant comports with his federal due process rights." Although the Magistrate Judge did not

10

arrive at many definitive conclusions adverse to the Plaintiffs on these issues, we address both of these elements.

Regarding due process, the Magistrate Judge declines to take a clear position; rather, he equivocates by stating that it "may not be satisfied." Nevertheless, he proceeds to recommend that the District Court deny Plaintiffs' Application for Default "for want of personal jurisdiction," implicitly resolving the question against Plaintiffs without making an express finding.

**1. The Ohio Longarm Statute Is Satisfied**

In his Opinion, the Magistrate Judge explains, "Ohio's longarm statute provides that a court may exercise personal jurisdiction over an individual in a cause of action arising from that person's 'transacting any business in this state.' Ohio Rev. Code § 2307.382(A)(1)." (Opinion at 7.)

The Magistrate Judge continues, "Assuming arguendo that Radian Industries maintained a location in Ohio and that Chapiro may have conducted business on its behalf using the 'principal place of business for hardware' address, Ohio's longarm statute may be satisfied." Radian Industries did indeed maintain its headquarters in Ohio, and Defendant Chapiro did indeed conduct business on the Company's behalf on numerous occasions; these activities included: submitting federal grant proposals, soliciting investments, and attending defense conferences paid for by Company funds, all on the Company's behalf. While the Magistrate Judge concedes here that Ohio's longarm statue may be "narrowly satisfied", Plaintiffs maintain that the Ohio long-arm statute is substantially satisfied in this case.

**2. The *Sullivan* Standard is Met Here**

The Magistrate Judge expresses his belief that exercising personal jurisdiction over Chapiro in this Court does not meet the first two prongs of the *Sullivan* test, writing, "My review of the documents does not reveal that Chapiro was ever present in Ohio, directed any marketing in Ohio, or had contact with any resident of Ohio other than Plaintiffs himself." The Magistrate Judge also concluded that exercising personal jurisdiction over Chapiro in this court does not meet the "reasonableness" element of the *Sullivan* test, characterizing Defendant's contacts with Ohio as

11

"attenuated" and Plaintiff Rapport's activities in Ohio as "unilateral," and concludes, "[i]n effect, Rapport is Chapiro's only link with the Ohio forum." (Opinion at 12).[10]

### A. The *Mileti* Case

The Sixth Circuit has expressly held that a court establishes personal jurisdiction over a nonresident defendant when that defendant deliberately transacts business by negotiating and executing a contract through communications directed to an Ohio resident. *Cole v. Mileti*, 133 F.3d 433, 436 (6th Cir. 1998) ("If, as here, a nonresident defendant transacts business by negotiating and executing a contract … to an Ohio resident, then the defendant has purposefully availed himself of the forum by creating a continuing obligation in Ohio. … Furthermore, if the cause of action is for breach of that contract, as it is here, then the cause of action naturally arises from the defendant's activities in Ohio. … Finally, when we find that a defendant … purposefully availed himself of the forum and that the cause of action arose directly from that contact, we presume the specific assertion of personal jurisdiction was proper.").

Here, Defendant Chapiro served as the CEO of Radian Industries, a company headquartered and operated in Ohio, and entered into multiple business contracts and transactions with both Radian and Plaintiff Rapport, an Ohio resident.[11] Defendant also used Plaintiff Rapport's Cleveland address as the designated business location for filings and notices, including the federal System for Award Management, submitted federal grant proposals on behalf of Radian, and was well-aware that Radian's physical operations, hardware, and development activity were based in Ohio.

---

[10] The Magistrate Judge suggests Wyoming as the more appropriate forum (Opinion at 10). However, incorporation and choice-of-law provisions alone do not establish purposeful availment for personal jurisdiction purposes. Rapport was never present in Wyoming during the relevant time period, and there is no evidence in the record that Chapiro was ever a resident of Wyoming or physically present there during the relevant time period. None of the conduct giving rise to this dispute occurred there. By contrast, the operative facts of the parties' business relationship and the alleged misconduct at issue were centered in Ohio. Treating Wyoming's corporate ties as dispositive, while discounting Ohio's substantive and dispute-generating contacts, physical presence notwithstanding, departs from the framework articulated in *Burger King Corp. v. Rudzewicz*, which instructs courts to evaluate the parties' actual course of dealing.

[11] These included: the Founder's Agreement; a formal loan agreement; the ARK Name Change and Incorporation document, which listed Plaintiffs' Cleveland address as the "principal place of business for hardware"; and numerous subsequent interstate financial transactions (Compl. Exh. D1) that directly underlie multiple claims in the suit, including breach of contract, conversion, civil theft, fraudulent conveyance, and RICO.

12

Therefore, Defendant knowingly entered into business contracts—which he is alleged to have breached—and an ongoing business relationship with an Ohio-resident officer, directed communications and obligations into Ohio, and his alleged misconduct arises directly from that relationship. Under *Cole*, these facts establish personal jurisdiction as a matter of law, and the Magistrate Judge's conclusion that Defendant lacked sufficient Ohio contacts cannot be reconciled with this binding Sixth Circuit precedent.

Binding Sixth Circuit precedent establishes that all three prongs of the *Sullivan* test are satisfied here, and resolves the personal jurisdiction question.[12] For completeness, Plaintiffs nevertheless address the remaining points raised in the Magistrate Judge's analysis individually.

**B. Purposeful Availment is Satisfied**

The Magistrate Judge reasons that "Plaintiffs' claims do not show that Chapiro intended to avail himself of the Ohio forum." But purposeful availment does not depend on any personal intent to invoke jurisdiction; rather, it depends on intentional conduct satisfying the minimum contacts rule. A defendant establishes minimum contacts when he deliberately enters into a continuing business relationship with a forum resident, even if all physical activity occurs elsewhere. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) ("Jurisdiction … may not be avoided merely because the defendant did not physically enter the forum."). *Cole v. Mileti*, *supra*.

With regard to whether Defendant entered into a continuing business relationship in Ohio, the evidence is overwhelming—Defendant deliberately and voluntarily entered into multiple business contracts with both Radian Industries, which is headquartered in Ohio, and with Nathan Rapport, who is a resident of Ohio. These contracts included, *inter alia*, a loan agreement (Compl. Exh. A1 p. 48) stating, "Michael Chapiro hereby agrees to loan Radian Industries Inc. $30,000 upon

---

[12] In the *Ford* case, the Supreme Court's distinguished *Walden*, relied upon by the Magistrate Judge (Opinion at 9), in a way particularly apropos to the case here, *to wit*, "But *Walden* has precious little to do with the cases before us. In *Walden*, only the plaintiffs had any contacts with the State of Nevada; the defendant-officer had never taken any act to "form[ ] a contact" of his own... The officer had "never traveled to, conducted activities within, contacted anyone in, or sent anything or anyone to Nevada." *Id.*, at 289. So to use the language of our doctrinal test: He had not "purposefully avail[ed himself] of the privilege of conducting activities" in the forum State…. Because that was true, the Court had no occasion to address the necessary connection between a defendant's in-state activity and the plaintiff's claims. " *Ford*, 592 U.S. at __, slip op. at 17, citations omitted.

execution of this agreement." This constitutes purposeful availment of the privilege of conducting business in Ohio and supports the exercise of specific personal jurisdiction under both Ohio law and due process principles. The foregoing loan agreement also satisfies the "contractual relationship" in the case the Magistrate Judge cites in his discussion of the due process requirement as well. (*Ford Motor Co.*, 592 U.S. at 359.)

**C. Arising out of or Relating to Activity in the State**

Plaintiffs' claims arise directly out of Defendant's conduct in his capacity as an officer of an Ohio-based company. The alleged misconduct—including breach of contract, interference with business relationships, defamation, and misuse of trade secrets—stems from Defendant's deliberate and voluntary engagement in Ohio-based commercial activity. Defendant deliberately engaged with an Ohio resident and an Ohio-based company to carry out business with foreseeable legal consequences in the state. Contrary to the Magistrate Judge's belief, the "arising out of or relating to" element of *Sullivan* is met in this case. *Cole v. Mileti*, *supra*; *Burger King*, *supra*.

**D. The Exercise of Jurisdiction over Chapiro is Reasonable in this Forum**

To arrive at his conclusion on reasonableness, the Magistrate Judge misapplies the standard, omits basic facts of the case, and fundamentally misrepresents the relationship between the parties; Rapport and Chapiro were not merely acquaintances—they were officers of Radian Industries (ECF No. 1 ¶¶ 80-82), which was headquartered in Ohio. The Magistrate Judge acknowledges that physical presence in the forum state is not required. It is equally well-established that due process does not require marketing to the forum state or contact with multiple residents, so these points are also legally irrelevant. No other Ohio residents are parties to this action, and Plaintiffs have not alleged specific legal injuries to anyone else.

In addition, the Magistrate Judge's claim that Plaintiff Rapport is Chapiro's only link with the Ohio forum is clearly refuted by the Loan Agreement between Chapiro and Radian Industries, as well as the fact that Defendant admitted to improperly disclosing Radian's trade secrets and improperly retaining Work Product (Compl. Exh. E2 p. 5, ECF 2-14, Page ID 443); these contacts

14

are central to the claims asserted and independently establish forum-related conduct beyond Plaintiff Rapport alone.

Given these facts, it is clear that Defendant purposefully availed himself of the privilege of conducting business in Ohio, that Plaintiff's claims arise directly from those forum-based contacts, and that the exercise of jurisdiction in Ohio is both reasonable and constitutionally appropriate. The Magistrate Judge's speculation that due process "may not be" satisfied (Opinion at 8) is contrary to law and unsupported in light of the numerous and deliberate nature of Defendant's forum contacts and forum related activities.[13] *Cole v. Mileti*, *supra*.

## VI. CONCLUSION

Plaintiffs respectfully requests that the District Court reject the Magistrate Judge's Report and Recommendation, find that service in this case was proper and that personal jurisdiction exists. Additionally, Plaintiffs request an entry of default against Defendant Chapiro and that the Court allow this case to go forward on a default hearing.

Date: January 23, 2026

Respectfully Submitted,

*/s/Michael W. Vary*

Michael W. Vary, Ohio Reg. 33,789
Counsel for Plaintiffs
17710 Westview Drive
Bainbridge, Ohio 44023
vary.michael@gmail.com
216-496-3429

---

[13] The treatment of personal jurisdiction in this matter stands in stark contrast with cases arising under the Telephone Consumer Protection Act and Junk Fax Protection Act, where courts have held that a single telephone call or fax purposefully directed to an Ohio resident or business may suffice to establish personal jurisdiction in Ohio. *See Progressive Health and Rehab Corp. v. Medcare Staffing, Inc.*, No. 2:2019cv04710 - Document 37 (S.D. Ohio, 2020). If such minimal communications are sufficient to establish personal jurisdiction, then surely a case as detailed above, that centers on alleged misconduct by the CEO of an Ohio-based company, causing harm to an Ohio resident, necessarily satisfies the jurisdictional standard as well.

15