**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| Nathan Rapport and<br>Radian Industries Inc.,<br>*Plaintiffs,*<br><br>*v.*<br><br>Michael Chapiro,<br>*Defendant.* | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | Case No. 1:25-cv-02071-CEF<br><br>Judge Charles E. Fleming |

**DECLARATION OF NATHAN RAPPORT IN SUPPORT OF PLAINTIFFS' SUPPLEMENTAL MEMORANDUM**

I, Nathan Rapport, declare as follows:

1. I am a Plaintiff in this action and was the founder, Chairman of the Board, and Chief Technology Officer of Radian Industries Inc. I have personal knowledge of the facts stated in this declaration and, if called as a witness, could testify competently to them.
2. During Radian's operations, I resided and worked in Cleveland, Ohio. I performed Radian's physical research and development, engineering, experimentation, prototype construction, hardware integration, and related technical work in Cleveland. Radian's physical hardware, prototypes, technical-development materials, and experimental apparatus were maintained there.
3. Cleveland was Radian's sole operating location for its physical research-and-development and hardware program. Radian maintained no other operating laboratory, engineering facility, prototype facility, or hardware-development facility in any other state. In short, Radian had no physical presence or operations in any state other than Ohio.
4. Michael Chapiro knew throughout Radian's operations that I was located in Cleveland and that Radian's physical technical work was being performed there. We communicated regularly concerning that work, and he participated in the Company's business and technical-development activities with knowledge of the Cleveland location.

5. Chapiro personally created the September 9, 2024 document titled *Name Change and Incorporation*. That document designated my Cleveland address as Radian's "principal place of business for hardware." A true and accurate copy of that document is contained in the corporate records previously filed with the Complaint as Exhibit A1.
6. Chapiro also personally submitted Radian's registration in the federal System for Award Management ("SAM"). The registration used my Cleveland address as Radian's business location.
7. Funds provided to Radian pursuant to Chapiro's Loan Agreement were deposited into Radian's Mercury bank account. Those funds were intended to support the technical-development program I was conducting in Cleveland, including engineering, experimentation, prototype development, and acquisition of hardware and components for that work.
8. Chapiro also physically sent equipment to me in Cleveland in connection with Radian's technical work. Among other items, he shipped me a camera that I personally received in Cleveland. He also sent power supplies, electronics, and other equipment used or evaluated in connection with the technical-development program.
9. The contemporaneous correspondence concerning the camera, identified in the damages record as Rapport's Email Exchange with telescopes.net, is a true and accurate copy of the communications reflected there. Those communications concern equipment used or evaluated in connection with the technical work I was performing in Cleveland. The refund discussion makes clear that the camera was purchased by Chapiro and received by me. (Ex. C3 at 25–29.)
10. Defendant principally drafted the January 2025 Founders Agreement. I made two substantive revisions to the framework he supplied. First, I designed the vesting schedule governing the founders' contemplated share allocations. Second, I requested the Vacuustat-specific provision in § 13(e)(1), which states that the terms of the Vacuustat license are defined in a separate agreement and that the separate agreement controls in the event of a conflict.
11. I designed the vesting schedule reflected in § 3(a) of the Founders Agreement. The schedule was intentionally accelerated and front-loaded. My intention was to provide both founders with

substantial protected equity early in the relationship and to place the remaining contemplated equity on a substantially shorter vesting timetable than a conventional startup vesting schedule.

12. At the time I designed that vesting schedule, the parties' governance arrangement gave me two of Radian's three Board seats. I structured the equity schedule so that Chapiro would nevertheless receive substantial and rapidly increasing economic protection as the minority cofounder.

13. I personally paid $7,000 through Upwork for 40 hours of engineering work at $175 per hour in connection with the Vacuustat. That engagement produced the March 26, 2020 *Vacuustat Structure Final Report*, including the CAD and structural-analysis work reflected in that report. I paid those charges from my own personal funds.

14. During my employment with Bread Financial, my annual base salary was $150,000, and my total compensation was higher because I also received bonus compensation. My employment with Bread ended at the end of August 2024. My 2024 W-2 and earnings summary reports gross pay of $121,920.95 for that partial year. Exhibit F4 is a redacted excerpt of that W-2 and earnings summary showing the compensation information while omitting unrelated personal and tax-identification information.

15. Exhibits F1 through F9 submitted with Plaintiffs' damages filing are true and accurate copies of the documents, communications, screenshots, records, photographs, or other materials identified by their respective exhibit captions. I recognize those materials from my personal participation in the underlying communications or events, my receipt or maintenance of the records, or my personal capture or collection of the materials.

16. The facts stated above supplement the documentary record already filed in this action and are limited to matters within my personal knowledge, including Radian's Cleveland operations, the Founders Agreement revisions described above, the Vacuustat engineering engagement, my prior compensation, and authentication of materials submitted with Plaintiffs' damages filing.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed October 19, 2026 in Haifa, Israel.

Nathan Rapport